477 A.2d 857

**COMMONWEALTH of Pennsylvania**

v.

**Robert LARK, Appellant.**

Supreme Court of Pennsylvania.

Argued April 9, 1984.

Decided June 7, 1984.

William R. Solvibile (Court-appointed), Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Steven Cooperstein, Asst. Dist. Attys., Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

LARSEN, Justice.

Appellant Robert Lark, was arrested on January 9, 1980, and charged with robbery, theft, assault, recklessly endan-

gering another person, possessing instruments of crime generally and various other weapons offenses in connection with an armed robbery that took place on December 28, 1979. Appellant's motion to suppress physical evidence that had been discovered at the scene of his arrest, statements that he had made to the police after his arrest, and his identification by the complaining witness, was denied. Appellant was subsequently convicted by a jury of robbery and possessing instruments of crime generally. Post-verdict motions were denied and appellant was sentenced to consecutive terms of imprisonment of ten to twenty years for robbery and two and one-half to five years for the weapons offense. On appeal, the Superior Court affirmed. *Commonwealth v. Lark*, 316 Pa.Super. 240, 462 A.2d 1329 (1983). We granted appellant's petition for allowance of appeal and we now affirm.

 The only issue in this case is whether the lower courts erred in concluding that appellant's oral statements to the police were admissible against him at trial. Our standard for reviewing the denial of a motion to suppress is well-defined.

> Our responsibility on review is "to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings." ... In making this determination, this Court will consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.

*Commonwealth v. Kichline*, 468 Pa. 265, 279, 361 A.2d 282, 290 (1976) (citations omitted).

Viewed in this light, the record reveals the following facts.[1] On the day of his arrest, appellant was wanted by

---

1. The suppression court failed to make specific findings of fact in this case. That court's entire ruling, announced in open court, was as follows:

 On the Motion to Suppress the Statement of the Defendant, I am going to deny the Motion on the authority of *Commonwealth versus*

the police for robbery and murder. Based on an informant's tip that appellant was going to commit another robbery, the police set up a surveillance team around the site of the proposed robbery. Appellant did show up, but before he could be arrested he realized that he was being watched and attempted to flee. After a half-hour long chase appellant entered a private residence and took hostages. He then telephoned an attorney, Lewis Small, who went to the scene and assisted appellant in surrendering. Appellant was taken to an interrogation room in the Police Administration Building where he conferred privately with Mr. Small for approximately twenty minutes. Mr. Small then left, informing the police on his way out that appellant did not wish to make a statement.

Two detectives then went in to obtain standard background information, to inform appellant of the charges against him,[2] and to warn him of his constitutional rights. After reading appellant his rights, the detectives asked appellant seven questions in order to ascertain whether he did, in fact, understand his rights. According to the testimony of Detective Lawrence Gerrard, this questioning of appellant proceeded as follows:

> *Rigler,* [488 Pa. 441], 412 Atlantic 2nd, 846, which I find to be on point in this case and also the recent expression of the law on the subject decided March 28th, 1980.
>
> The facts in the case indicate that there was no agreement by the police not to interrogate the defendant. On the authority of that case I find no basis for suppressing the statement. If it becomes appropriate I will make findings of fact and conclusions of law in more detail.
>
> Accordingly, we must review the record of the suppression hearing and "consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted."

**2.** Although this case only concerns appellant's trial for robbery and weapons offenses, on the day of his arrest appellant was also charged with offenses in connection with the murder of a store owner, stealing a car, kidnapping the woman whose home he held while he called Attorney Small, and threatening the life of an assistant district attorney.

I asked him first:

"Do you understand that you have a right to keep quiet, and do not have to say anything at all?" He responded, "Sure do." I asked him, "Do you understand that anything you say can and will be used against you?" He responded, "Yes."

I asked him, "Do you want to remain silent?" He responded, "No. I'll talk to you about anything but I ain't talking about any murders."

I asked him, "Do you understand that you have a right to talk with a lawyer before we ask you any questions?" He said, "Yeah."

Number five, "Do you understand that if you cannot afford to hire a lawyer, and you want one, we will not ask you any questions until a lawyer is appointed for you free of charge?" To this he responded, "Yeah."

"Do you want either to talk with a lawyer at this time, or to have a lawyer with you while we ask you questions?" To this he responded, "I already talked to a lawyer and I ain't sure if I'm going to use him or not. He might not be as crack as I thought. I know what I'm doing."

I asked him number seven, "Are you willing to answer questions of your own free will, without force or fear, and without any threats or promises having been made to you?" He responded, "Sure, ask all you want. But I ain't giving no written statement."

After appellant had expressed a willingness to talk, the detectives interviewed him for approximately three and one-half hours, during which time he was twice offered a meal, was allowed to use the restroom facilities and was given water. According to the detectives, a "lengthy and rambling conversation between [the detectives] and [appellant] took place." Appellant bragged continually about "how he would beat every case that ever went through the system. That he had robbed the zoo and successfully beat it in court and he eventually would beat everything here because he quoted Rule 1100 and different court decisions."

During the conversation, appellant admitted committing the robbery which is the subject of this case.

Appellant testified at the suppression hearing that he had been arrested many times before, that he was very familiar with the system, and that he knew how everything worked. He also stated that he knew in his own mind what he should and should not do.

Although appellant does not claim that his statements were involuntary, he nevertheless argues that they should have been suppressed because a waiver of constitutional rights by a counseled defendant, which waiver occurs during police interrogation but in the absence of counsel, is invalid as a matter of law. This argument is without merit.

We have held that a person accused of crime who has already engaged counsel may, with full knowledge of his rights but in the absence of counsel, effectively waive his right to have counsel present while he is questioned by the police. *Commonwealth v. Hawkins*, 448 Pa. 206, 209–11, 292 A.2d 302, 304–05 (1972).

In this case, there is no question that appellant was fully informed of his rights; in fact, while the police were questioning appellant to make sure that he understood his rights, appellant bragged to the police, "I know what I'm doing." The Superior Court did not err, therefore, in affirming the trial court's refusal to suppress appellant's statements on this basis.

Appellant also argues that his statements should have been suppressed because the police violated his constitutional rights when they questioned him after his attorney had informed them that appellant did not wish to make a statement. This argument is also without merit.

As the United States Supreme Court recently explained in *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980):

We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is

to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (*other than those normally attendant to arrest and custody*) that the police should know are reasonably likely to elicit an incriminating response from the suspect. . . .

*Commonwealth v. Chacko*, 500 Pa. 571, 578–79, 459 A.2d 311, 315 (1983) (emphasis added).

■ In this case, the police initially approached appellant in order to inform him of his rights and the charges against him. These actions by the police were actions "normally attendant to arrest and custody" and did not constitute interrogation. Thus, the fact that the police read appellant his rights and questioned him concerning his understanding of those rights did not violate his apparent wish to remain silent.

■ We also find that the subsequent interview of appellant by the police, which resulted in appellant's inculpatory statements, did not violate appellant's right to remain silent because appellant waived that right before the interview took place.

■ Although a defendant may authorize his attorney to exercise his rights on his behalf, a defendant's right to remain silent is his own; the decision whether or not to waive that right can only be made by him. *See Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964) (emphasis added) (right against self-incrimination encompasses "the right of a person to remain silent unless *he* chooses to speak in the unfettered exercise of *his own* will, and to suffer no penalty . . . for such silence"). Thus, a defendant is not obligated to follow his attorney's advice to remain silent, nor is any individual precluded from changing his mind and deciding that he does, in fact, wish to make a statement.

In this case, although appellant's attorney purported to act on his behalf when he informed the police that appellant did not wish to make a statement, appellant himself contradicted his attorney when he told the police: "I'll talk to you

about anything but I ain't talking about any murders.... [A]sk all you want. But I ain't giving no written statement." Appellant's responses to the routine questions of the police clearly amounted to a waiver of his right to remain silent. The Superior Court did not err, therefore, in affirming the suppression court's conclusion that appellant's statements in response to interrogation by the police were admissible against him at trial.

We note that this is not the case of a defendant who was coerced or tricked by the police into making statements against his will or interest. Rather, appellant had a lengthy history of experience with the police, and his actions were those of an individual who believed he was in control of the situation: he knew enough to obtain an attorney even before he surrendered to the police, he decided that his attorney "might not be as crack as [he] thought,"[3] he bragged to the police that he would "beat" this case just as he had "beaten" others, and he decided that he knew what he was doing and that he was going to do what he wanted.[4] Under the circumstances, it is clear that appellant's incriminating statements were not obtained in violation of his constitutional rights and that it was not error to admit those statements against appellant at trial.

Accordingly, the order of the Superior Court is affirmed.

NIX, C.J., joins in this opinion and files a separate concurring opinion.

HUTCHINSON, J., concurs in the result.

**3.** In fact, appellant did not retain Attorney Small to represent him. New counsel was appointed for appellant prior to his preliminary hearing.

**4.** Appellant maintained this attitude throughout this case. Even at his sentencing he testified about his interaction with the police on the day of his arrest:

I was there. I know what took place, and I didn't tell them cops nothing.

The detective, just like I stated to him, in front of Judge Louis Hill, that I know the procedures when I get arrested, and I am not the type to give up statements.

I may say little tidbits just to tease them, but you know, that's just to tease them, you know ....

NIX, Chief Justice, concurring.

I join the opinion. I write to emphasize that this is not a case where the police, in disregard of retained counsel's express desire to be present during interrogation, sought to elicit an incriminatory statement in counsel's absence. *See Commonwealth v. Hilliard*, 471 Pa. 318, 322, 370 A.2d 322, 324 (1977); *Commonwealth v. Hawkins*, 448 Pa. 206, 220, 292 A.2d 302, 309 (1972) (Nix, J., dissenting opinion joined by Roberts and Manderino, JJ.) I am still of the view that where counsel has been engaged to represent a defendant and has expressed specifically a desire to be present during any police interrogation, a waiver of counsel obtained in counsel's absence should be held invalid as a matter of law. I am satisfied that the record amply supports the majority's conclusion that the police in this instance were not attempting to interrogate Mr. Lark. *Commonwealth v. Chacko*, 500 Pa. 571, 459 A.2d 311 (1983).