701 A.2d 190

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Darrick HALL, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 15, 1996.

Decided Sept. 17, 1997.

274

276

Vincent P. DiFabio, Paoli, for D. Hall.

Nicholas J. Casenta, Jr., Robert A. Graci, Harrisburg, for Commonwealth.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

*OPINION*

CASTILLE, Justice.

Following a jury trial, appellant was found guilty of first degree murder,[1] carrying a firearm without a license,[2] robbery,[3] conspiracy to commit robbery,[4] and recklessly endangering another person[5] in connection with the December 18, 1993 death of Donald Johnson. The jury acquitted appellant of conspiracy to commit murder. Following the penalty hearing, the jury found that two aggravating circumstance[6] outweighed the one mitigating circumstance,[7] and set the penalty at death. On November 7, 1994, the trial court imposed the jury's sentence of death.[8] This direct appeal followed. For the reasons expressed herein, we affirm the judgment of sentence imposed by the Court of Common Pleas of Chester County.

## I. SUFFICIENCY OF THE EVIDENCE

■ Appellant first claims that the evidence was insufficient to support the jury's verdict that he was guilty of first degree

1. 18 Pa.C.S. § 2502(a).

2. 18 Pa.C.S. § 6106.

3. 18 Pa.C.S. § 3701.

4. 18 Pa.C.S. § 903.

5. 18 Pa.C.S. § 2705.

6. The two aggravating circumstances unanimously found by the jury were that appellant committed the killing in the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6), and that during the commission of the killing, appellant knowingly created a grave risk of death to another person in addition to the victim, 42 Pa.C.S. § 9711(d)(7).

7. The one mitigating factor found was that the events leading up to the fatal shot included the possibility of a struggle. 42 Pa.C.S. § 9711(e)(8) (any other evidence of mitigation).

8. With respect to appellant's other convictions, the trial court imposed the following sentences: two and one-half (2 1/2) to five (5) years imprisonment for carrying a firearm, to run concurrent with the sentence of death; ten (10) to twenty (20) years for robbery, to run consecutive to the sentence of death; and, five (5) to ten (10) years for conspiracy to commit robbery, to run concurrent with the robbery sentence. With respect to the recklessly endangering another person conviction, the trial court entered a verdict of guilt without further imposition of sentence.

murder. When reviewing a sufficiency of the evidence claim, an appellate court must view all the evidence and all reasonable inferences arising therefrom in the light most favorable to the Commonwealth as the verdict winner in order to determine whether the evidence was sufficient to enable the fact finder to find that all of the elements of the offenses were established beyond a reasonable doubt. *Commonwealth v. Burgos,* 530 Pa. 473, 476, 610 A.2d 11, 13 (1992). Using this standard, the record below establishes the following evidence:

At approximately 10:00 a.m. on December 18, 1993, Troy Davis, Tyrone Greene and appellant departed Philadelphia by automobile for Coatesville in Chester County, Pennsylvania [9] with the intent of committing a robbery in Coatesville. Appellant and his cohorts arrived in Coatesville at approximately 12:00 noon. Upon arriving in Coatesville, the three men decided to rob a laundromat on Main Street. Appellant and Greene proceeded into the laundromat while Davis waited in the car as the getaway driver. Appellant, armed with a loaded .357 caliber magnum revolver, went to the cashier's area in the rear of the laundromat while Greene, armed with a .22 caliber revolver, stayed near the front entrance to the laundromat. Appellant withdrew his revolver and demanded that the victim give him the money from the laundromat. After the victim refused to give appellant the money, appellant fired a shot which grazed the victim's head. Appellant then fired another shot from a distance of approximately four (4) to ten (10) inches which entered the back portion of the right side of the victim's head and traversed through the victim's brain causing instantaneous death. When appellant fired the fatal shot, his .357 caliber revolver was in double action firing mode, which would require nine pounds of pressure on the trigger to activate the hammer in order to fire a round.

After shooting the victim, appellant backed out of the laundromat waving his revolver at the ten (10) to fifteen (15)

9. Troy Davis and Tyrone Greene were initially scheduled to be tried together with appellant. The trial court, however, granted a pre-trial motion by appellant to sever his trial from that of Davis and Greene. Neither of these two individuals testified at appellant's trial.

people in the laundromat. Appellant then fled in the getaway car to a house in Coatesville where appellant and his cohorts changed clothes and joked about their weapons with the man who resided at the house. The three men eventually left the Coatesville house and returned to Philadelphia where they changed clothes once again at a fast-food restaurant.

Between December 19, 1993 and December 24, 1993, detectives in the Chester County District Attorney's Office interviewed three eye witnesses to the murder. On December 23, 1993, one of the witnesses identified appellant from a photographic array of eight (8) black males prepared by a Chester County detective. On December 24, 1993, a second eyewitness, independently from the first eyewitness, identified appellant from the same photographic array.

On December 27, 1993, an arrest warrant was issued for appellant's involvement in the murder and robbery. At approximately 6:50 a.m. on December 28, 1993, officers of the Philadelphia Police Stakeout Unit arrested appellant at his mother's home in Philadelphia. The Philadelphia police transported appellant to the Philadelphia Police Administration Building where appellant was processed and turned over to the Chester County detectives. After waiving his *Miranda* rights,[10] appellant was questioned by the Chester County detectives in the Philadelphia Police Administration Building. Appellant then made a statement in which he confessed to his participation in the robbery and murder. Appellant, however, contended that the shooting was an accident which occurred during a struggle with the victim. Appellant's statement was reduced to a typewritten document by a Chester County detective. Appellant ultimately reviewed, corrected and signed the typewritten document.

 In first degree murder cases, the Commonwealth must prove that the defendant acted with a specific intent to kill, that a human being was unlawfully killed, that the person accused did the killing, and that the killing was done with

10. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

deliberation. 18 Pa.C.S. § 2502(d); *Commonwealth v. Mitchell*, 528 Pa. 546, 550, 599 A.2d 624, 626 (1991). Specific intent to kill can be proven where the defendant knowingly applies deadly force to the person of another. *Id.* Death caused by the use of a deadly weapon upon a vital part of the victim's body is sufficient to prove the specific intent required for a conviction of first degree murder. *Commonwealth v. LaCava*, 542 Pa. 160, 171, 666 A.2d 221, 226 (1995).

■ Here, the evidence presented at trial showed that appellant entered the laundromat with a loaded revolver, which is clearly a deadly weapon. After the victim declined appellant's demand for money, appellant pointed the revolver at a vital part of the victim's body. At the time appellant killed the victim, the revolver was four to ten inches away from the victim's head. Also, two eyewitnesses identified appellant as the person who emerged from the rear of the laundromat after the shots were fired which killed the victim and that appellant waved the revolver at them in his attempt to flee the scene. Moreover, appellant admitted to shooting the victim. Accordingly, we find that this evidence is sufficient to establish that appellant acted with malice aforethought and with the specific intent to kill the victim. *See Commonwealth v. Bond*, 539 Pa. 299, 652 A.2d 308 (1995) (evidence establishing that defendant admitted being at the victim's store; that the defendant aimed a gun at a vital part of the victim's body; that the defendant fired the shot from four feet away; and that defendant admitted shooting the victim, albeit claiming it was an accident, was sufficient to support guilty verdict against defendant for first degree murder).

## II. *SUPPRESSION OF STATEMENTS*

Appellant next argues that the trial court erred by not suppressing the inculpatory statements he made to a Chester County detective at the Philadelphia Police Administration Building on the grounds that the statements were obtained in alleged violation of appellant's Sixth Amendment right to counsel as guaranteed by the United States Constitution.

Appellant asserts that his Sixth Amendment rights were violated because his attorney, who represented appellant in a separate and unrelated federal criminal matter, telephoned the Police Administration Building at the request of appellant's mother to speak with appellant and the Philadelphia police would not allow the attorney to speak with appellant. Thus, appellant contends that his waiver of his right to counsel was invalid.

 Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Cortez*, 507 Pa. 529, 532, 491 A.2d 111, 112, *cert. denied*, 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985). When reviewing rulings of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence for the defense which remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Cortez*, 507 Pa. at 532, 491 A.2d at 112.

 The right to counsel is enunciated in the *Miranda* warnings. The Commonwealth bears the burden of establishing whether a defendant knowingly and voluntarily waived his *Miranda* rights. *Commonwealth v. Hughes*, 521 Pa. 423, 443, 555 A.2d 1264, 1274 (1989). In order to do so, the Commonwealth must establish that the proper warnings were given, and that the accused manifested an understanding of these warnings. *Hughes*, 521 Pa. at 443, 555 A.2d at 1274. A defendant's waiver of his *Miranda* rights must be free of any impermissible inducement by the police that the defendant would receive special treatment if he made an immediate confession rather than wait to confer with his attorney. *Commonwealth v. Gibbs*, 520 Pa. 151, 553 A.2d 409, *cert. denied*, 493 U.S. 963, 110 S.Ct. 403, 107 L.Ed.2d 369 (1989). Moreover, a person accused of a crime who has already engaged

counsel may, with full knowledge of his rights but in the absence of counsel, effectively waive his right to have counsel present while he is questioned by the police. *Commonwealth v. Lark,* 505 Pa. 126, 132, 477 A.2d 857, 862 (1984).

Here, in denying appellant's motion to suppress his statement concerning his involvement in the victim's murder, the trial court made findings of fact. Specifically, the trial court found that on December 28, 1993 at 6:50 a.m., appellant was arrested by the Philadelphia Police and taken to the Philadelphia Police Administration Building. At no time during the arrest did any Philadelphia Police officer hear appellant ask to call or speak with an attorney. After being routinely processed by the Philadelphia police, appellant was turned over to the Chester County detectives. A Chester County detective began interviewing appellant in an interview room at the Philadelphia Police Administration Building by introducing himself and reading the contents of the affidavit accompanying the criminal complaint against appellant. The Chester County detective then issued appellant the proper *Miranda* warnings from a printed card used by the Chester County police. Appellant verbally waived his *Miranda* rights and signed the *Miranda* warnings card. Appellant then began to cry and gave a statement that the murder was an accident. Appellant's statement was then reduced to a typewritten document which appellant ultimately reviewed, corrected and signed and which was later introduced at trial. At no time during the entire interview process did appellant request an attorney. Moreover, the record reflects that the Chester County detective never made any promise of leniency in exchange for a statement by appellant.

While this interview was being conducted, the attorney representing appellant in his separate federal criminal matter supposedly called the Philadelphia Police Administration building at the request of appellant's mother. The Philadelphia police represented that they were neither questioning appellant nor would they allow the attorney to speak with appellant. The attorney, however, was not retained by appel-

lant's mother at the time of the call and he was never subsequently retained by appellant in connection with this matter. Most importantly, appellant himself never asked for an attorney. Since one's Sixth Amendment and Fifth Amendment rights are personal, they cannot be invoked by another party. *Lark,* 505 Pa. at 133, 477 A.2d at 861 (*citing Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)) (only defendant controls the authority to exercise his rights).

Based on these facts, we conclude that appellant was not improperly induced into waiving his *Miranda* rights. Also, we find that appellant knowingly, intelligently and voluntarily waived his right to have counsel present. Thus, the trial court correctly denied appellant's motion to suppress the statement he gave to the Chester County detective describing his involvement with the murder. Hence, this claim must fail.

## III. *PROSECUTORIAL MISCONDUCT*

Appellant next argues that the prosecutor committed prosecutorial misconduct by making three improper remarks during closing argument at the guilt phase of trial. In reviewing a claim of improper prosecutorial comments, our scope of review is whether the trial court abused its discretion. *Commonwealth v. Simmons,* 541 Pa. 211, 246, 662 A.2d 621, 638 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 945, 133 L.Ed.2d 870 (1996). Generally, comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. *Simmons,* 541 Pa. at 246–47, 662 A.2d at 639. Prosecutorial misconduct, however, will not be found where comments were based on evidence or proper inferences therefrom or were only oratorical flair. Moreover, in order to evaluate whether the comments were improper, we must look at the context in which they were made. *Commonwealth v. Jones,* 542 Pa. 464, 512, 668 A.2d 491, 514 (1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 89, 136 L.Ed.2d 45 (1996). We note that this is a relatively stringent standard against which

appellant must labor. *LaCava*, 542 Pa. at 181, 666 A.2d at 231.

Two of the three instances of prosecutorial misconduct complained of on appeal by appellant concern the following remarks made by the prosecutor during closing argument at the guilt phase of trial:

What did we prove here? What did we prove here? I am going to go over the evidence briefly, and then make some inferences to prove the specific intent to kill, especially in homicides, when there is normally two witnesses to the incident, to the murder. The defendant, he certainly witnessed it, he was right there, and Mr. Johnson [the victim], who can't speak. He's forever silenced. He won't see another Christmas.

(N.T. 10/27/94 at 788). Appellant's trial counsel immediately objected to these comments and moved for a mistrial. Trial counsel argued that the remark "forever silenced" improperly referred to appellant's failure to testify and the "see another Christmas" remark was designed to appeal to the sympathies of the jury. After the trial court denied the objection, the prosecutor continued by arguing the following:

Ladies and gentlemen of the jury, the law recognizes that it is very difficult for one to interpret what is on one's mind, what is in one's mind when they do things. We all know what's on our minds. I am intently right now involved in this case, you are intently listening to my case, so the law realizes the difficulty, and they therefore allow you to look at the facts and circumstances, all of them, all of them surrounding a killing, to infer what was this guy's mind when he killed.

(N.T. 10/27/94 at 789).

Appellant now contends that the prosecutor's "forever silenced" remark was improper because it impermissibly commented on his refusal to testify. We disagree with appellant's contention.

▉▉▉▉▉ A prosecutor is not permitted to comment adversely upon a defendant's refusal to testify as to the merits of

the charges against him because it compromises the privilege against self-incrimination and the defendant's constitutional presumption of innocence. *Commonwealth v. Rolan,* 520 Pa. 1, 7, 549 A.2d 553, 556 (1988). Here, the "forever silenced" remark clearly refers to the victim's inability to speak, not to appellant's silence. Also, when the remark is read in the context of the entire closing, the prosecutor's remarks do not reflect adversely upon appellant's decision not to testify. Instead, the remark was an attempt by the prosecutor to explain to the jury the difficulty of proving the intent to kill and that such intent must be inferred from the facts and circumstances surrounding the killing since the victim cannot testify. Thus, the trial court did not abuse its discretion in ruling that the prosecutor's comment was not an impermissible comment on the defendant's failure to testify. *See Rolan,* 520 Pa. at 7–8, 549 A.2d at 556–57 (prosecutor's comment that jury had heard absolutely no evidence which would indicate someone other than defendant shot the victim was not an impermissible comment on the defendant's failure to testify); *Commonwealth v. Young,* 477 Pa. 212, 217, 383 A.2d 899, 901 (1978) (prosecutor's closing argument that jurors did not know what was in defendant's mind at the time of the offense or at the time he cooperated with police was not an impermissible comment on the defendant's failure to testify). Moreover, any prejudice by this statement was cured by the trial court's closing instruction that appellant had an absolute constitutional right not to testify and that no adverse inference could be drawn from appellant not testifying. *See Commonwealth v. Baker,* 531 Pa. 541, 559, 614 A.2d 663, 672 (1992) (the law presumes that juries follow the court's instructions as to the applicable law). Accordingly, this claim of prosecutorial misconduct must fail.

The second remark which appellant contends was improper was the prosecutor's remark that the victim would not "see another Christmas." Appellant claims this remark was improper because it was made solely to appeal to the sympathies of the jury so that they would be unable to render a true and impartial verdict.

■ It is well established that when presenting a case to the jury, the prosecutor must be free to present his or her argument with logical force and vigor. *Commonwealth v. D'Amato*, 514 Pa. 471, 489, 526 A.2d 300, 309 (1987). During trial, the Commonwealth introduced the statement appellant made to the Chester County detective at the Philadelphia Police Administration Building. In that statement, appellant contended that he participated in the crime because he needed the money to buy his two daughters Christmas presents. Moreover, the murder occurred on December 18, 1993, one week before Christmas, and, as the Commonwealth notes, Christmas was mentioned during trial as a reference point as to when the events surrounding the murder occurred. Based on the evidence offered at trial, we conclude that the prosecutor's comments were not delivered in an effort to appeal to the sympathies of the jury. Rather, the comment was a fair response to the reason offered by appellant in his statement as to why he participated in the crime. Therefore, the trial court did not abuse its discretion in finding that the prosecutor's comments were proper remarks which did not cause the jury to form a fixed bias or hostility towards appellant so that the jury was unable to render a true verdict based on the evidence. Accordingly, this second claim of prosecutorial misconduct must fail.

■ Appellant's third claim of prosecutorial misconduct concerns the following comments about appellant which were made during the prosecutor's closing argument at the guilt phase of trial:

> And about this defendant, to understand his mindset, again, to get into his mind as to how he acted when he shot and killed Mr. Johnson, we also must look at what he did after Moody's [the laundromat]. After he was laughing, joking, showing guns, hey, you like this, he went back to Philly, he. went back to McDonald's, he ate, went home, and then he went to visit his daughter. After he shot and killed a man, just went about as in every other perfect normal day. That tells you tons about his mind, what was in it.

Ladies and gentlemen, I submit to you we have proven our case beyond a reasonable doubt. And I would like to end by stating that the only thing colder than the grave of Mr. Johnson, is this guy's heart. The only thing colder, because he put him there, and he made sure he was going there. Because if he didn't shoot the second time, we might not be here. But he wanted to put him there the first time, and the instinct saved him, and the second time there was no instinct in the world that could have saved him, because he intentionally shot and killed him. And he walked out coolly, calmly, and collected, with a .357 revolver waving at patrons in the store.

(N.T. 10/27/94 at 800–01). Appellant's immediate objection to these comments and a request for a mistrial were denied by the trial court.

Appellant now argues on appeal that the reference to a "cold grave" and "cold heart" constituted prosecutorial misconduct. Appellant, however, fails to explain why he believes these remarks were improper. However, because of the relaxed waiver rule for capital cases which was set forth in *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 50 n. 19, 454 A.2d 937, 955 n. 19 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), we shall examine whether these comments were proper.

A distinguishing feature of first degree murder is the presence of malice which may be found from the circumstances surrounding the murder. Malice can be demonstrated by evidence of "wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty." *Commonwealth v. Wharton*, 530 Pa. 127, 146, 607 A.2d 710, 720 (1992). Here, the prosecutor's comments were not made for the sole purpose of inflaming the passion of the jury and impairing their ability to render a fair verdict. Rather, the prosecutor was recounting the evidence produced at trial [11] and how this evidence showed

11. At trial, the person whose house appellant and his cohorts went to in Coatesville after the murder testified that appellant and his cohorts

that appellant killed the victim with the necessary malice for first degree murder. Therefore, we find that the prosecutor's reference to appellant's "cold heart" was proper argument since he was merely arguing a reasonable inference which could be drawn from the evidence. *See Commonwealth v. Chester,* 526 Pa. 578, 598–600, 587 A.2d 1367, 1377–78, *cert. denied,* 502 U.S. 959, 112 S.Ct. 422, 116 L.Ed.2d 442 (1991) (prosecutor's comments about appellant that "[w]e're here together with the coldness of heart, hard to believe, and with an evil intention of mind, . . . and a coldness of disposition" were proper remarks which were not designed to inflame the passions of the jury). Accordingly, this claim of prosecutorial misconduct must fail.

## IV. *INEFFECTIVE ASSISTANCE OF COUNSEL*

▮▮▮▮ Appellant next raises numerous claims of ineffective assistance of trial counsel throughout trial. The law presumes that trial counsel was not ineffective and appellant bears the burden of proving otherwise. *Commonwealth v. Miller,* 494 Pa. 229, 431 A.2d 233 (1981). In order to sustain a claim of ineffective assistance of counsel, appellant must establish (1) that the underlying claim is of arguable merit; (2) that counsel's performance had no reasonable basis; and (3) that counsel's ineffectiveness worked to petitioner's prejudice. *Commonwealth v. Edmiston,* 535 Pa. 210, 237, 634 A.2d 1078, 1092 (1993). We shall examine each of appellant's ineffectiveness claims against this standard.

### (a) *Failure to Call Witnesses—Suppression Hearing*

▮▮▮▮ Appellant contends that he should be entitled to a new trial because his trial counsel was ineffective for failing to call his mother and Wanda Turner, appellant's ex-girlfriend, as witnesses at the suppression hearing. Appellant asserts that these witnesses would have testified that appellant requested

were laughing and showing him the guns they used that day. Also, appellant's statement to the police, which was admitted into evidence, showed that appellant returned to Philadelphia after the murder, that he ate at a McDonald's restaurant, and that he later went to visit his children because of Christmas and the one child's birthday.

to speak with counsel; thereby leading to the suppression of his statement concerning his involvement in the murder because he was denied his Sixth Amendment right to counsel. In order to make a claim of ineffectiveness for failure to interview and/or present a witness, appellant must prove: (1) the existence and availability of the witness; (2) counsel's awareness of, or duty to know of the witness; (3) the witness' willingness and ability to cooperate and appear on behalf of appellant; and (4) the necessity of the proposed testimony in order to avoid prejudice. *Commonwealth v. Stanley,* 534 Pa. 297, 300, 632 A.2d 871, 872 (1993).

Appellant's claim is belied by the factual findings made by the trial court after conducting a post-trial hearing on appellant's ineffectiveness claims. Here, the trial court heard the testimony of both appellant's mother and Wanda Turner that appellant asked them to call an attorney when he was being arrested. Nevertheless, the trial court found that neither appellant nor these two witnesses ever conveyed this request to either a Philadelphia Police officer during his arrest or the Chester County detective during the interview in which he made inculpatory statements. Thus, since the testimony of these two witnesses would not have changed the result of the suppression hearing, appellant was not prejudiced by trial counsel's failure to call these witnesses. Accordingly, this ineffectiveness claim must fail.

(b) *Failure to Call Witnesses—Guilt Phase:*

Appellant next contends that he should be awarded a new trial because his trial counsel was ineffective for failing to call Jamal Price as a witness on his behalf. Appellant alleges that Price would have provided him with an alibi defense since Price's testimony would have shown that Price was with appellant at appellant's mother's house at the time of the murder. As noted above, appellant can only sustain such an ineffectiveness claim for failing to interview or call a witness if he proves: (1) the existence and availability of the witness; (2) counsel's awareness of, or duty to know of the witness; (3) the witness' willingness and ability to cooperate and appear on

behalf of appellant; and (4) the necessity of the proposed testimony in order to avoid prejudice. *Stanley*, 534 Pa. at 300, 632 A.2d at 872.

■ After conducting a post-trial hearing on the ineffectiveness claim, the trial court found that appellant initially informed his trial counsel before trial that he had an alibi defense. However, at a subsequent meeting prior to trial, appellant informed his trial counsel that his alibi defense was not true and that he was present at the scene of the murder, but that the shooting was an accident. As this Court has stated:

> [T]here can be no ineffectiveness of trial counsel for failure to call an alibi witness when the defendant admits that his testimony would be perjured. Counsel cannot be held ineffective for failure to suborn perjury.

*Commonwealth v. Jones*, 501 Pa. 162, 167, 460 A.2d 739, 741 (1983). Here, appellant admitted that the alibi defense was false. Thus, his trial counsel cannot be deemed ineffective for failing to present perjured testimony. Accordingly, this claim must fail.

■ Appellant also contends that he is entitled to a new trial because trial counsel was ineffective for failing to inform appellant that if he testified at the guilt phase of his trial that he *could not* be cross-examined about his prior bad acts, including his criminal history. Appellant asserts that if his attorney had advised him of such, he would have testified that he had an alibi for the time of the murder.

Appellant's contention is patently baseless. After conducting the post-trial hearing on appellant's ineffectiveness claims, the trial court found that at the time of trial, appellant had the following criminal record: (1) a juvenile adjudication on November 14, 1986, for possession of a weapon on school property; (2) a juvenile adjudication on June 12, 1986, for burglary, criminal trespass and criminal conspiracy; (3) a juvenile adjudication on November 23, 1987, for delivery of a controlled substance with intent to deliver and criminal conspiracy; and (4) a federal conviction on June 1, 1994 for four counts of false

statements in acquisition of firearms and one count of criminal conspiracy. The trial court also found that appellant's trial counsel informed appellant of his options on testifying and that appellant's trial counsel informed appellant that he believed that appellant's prior convictions could not be used to impeach appellant.[12] Moreover, the trial court found that the decision whether to testify at the guilt phase of appellant's trial was the decision of appellant alone and that appellant retained the final decision on whether to testify or not. Based on these factual findings and credibility determinations by the trial court, which are supported by the record, we conclude that appellant was properly advised by his trial counsel on whether to testify and that appellant freely chose not to testify.[13] Accordingly, this claim of ineffectiveness must fail. *See Commonwealth v. Cross*, 535 Pa. 38, 44–45, 634 A.2d 173, 176 (1993), *cert. denied*, 513 U.S. 833, 115 S.Ct. 109, 130 L.Ed.2d 56 (1994)

(c) *Prosecutorial Misconduct—Guilt Phase:*

Appellant next claims that he should be awarded a new trial because his trial counsel rendered ineffective assistance by failing to object to the prosecutor's remark during closing argument at the guilt phase of trial for asking the jury to "send a message" to Philadelphia criminals.[14] In particular,

12. Appellant apparently ignores this factual finding and credibility determination by the trial court. Instead, appellant continues to erroneously rely on his testimony, which was not credited by the trial court, that his trial counsel advised him that his entire record would be revealed to the jury if he chose to testify.

13. We note that the trial court conducted a colloquy before the presentation of the defense case and at the close of the defense case on appellant's decision not to testify at the guilt phase of his trial. In both colloquies, appellant clearly expressed that he did not wish to testify and that the decision not to testify was his alone after speaking with his trial counsel about his options.

14. We note that appellant's counsel on this direct appeal to this Court is different from his trial counsel. Appellant's present counsel on appeal fails to properly frame this issue as an ineffective assistance of counsel claim for failing to object. Instead, appellant's present counsel frames the issue as one of prosecutorial misconduct. However, the relaxed waiver rule for capital cases set forth in *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 50 n. 19, 454 A.2d 937, 955 n. 19 (1982), *cert. denied*, 461

appellant argues that the prosecutor overstepped the lines of oratorical flair by arguing to the jury that:

I would ask you to send a message, and that is, you come out here from Philadelphia, as we have proven, and shoot someone like the defendant did, once in the face and once in the back of the head, you are guilty of first degree murder.

(N.T. 10/27/94 at 801).

As noted above, comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. *Simmons*, 541 Pa. at 246–47, 662 A.2d at 639. Also, a prosecutor's comments must be examined within the context in which they were made. *Jones*, 542 Pa. at 512, 668 A.2d at 514. Moreover, a jury's determination must be based solely upon the evidence and not a prosecutor's emotional appeal or crusading incitation to make a statement to the judicial system or to convince the jury that a certain verdict is necessary as a form of retribution for the ills inflicted on society by a certain class of people. *See LaCava*, 542 Pa. at 192–93, 666 A.2d at 237; *See also Commonwealth v. Crawley*, 514 Pa. 539, 559, 526 A.2d 334, 344 (1987).

Here, the evidence presented at trial showed that: appellant lived in Philadelphia; the robbery was planned in Philadelphia; appellant left Philadelphia for Coatesville in order to effectuate the robbery; appellant returned to Philadelphia after the robbery; and, appellant confessed to his participation in the murder in Philadelphia. Based on this evidence, we conclude that the prosecutor did not ask the jury to find appellant guilty simply because he was from Philadelphia. Rather, the prosecutor was providing a short synopsis of the crime which originated in Philadelphia and was consummated with the shooting in Coatesville. The reference to appellant being from Philadelphia in this exhortation was an

U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), compels us to properly frame the issue and resolve it on the record before this Court.

accurate summary of the facts surrounding the murder. Therefore, the prosecutor's comments were proper remarks since they neither caused the jury to form a fixed bias or hostility towards appellant nor did they ask the jury to send a message to the judicial system or the residents of Philadelphia who commit crimes in a surrounding county. *See Commonwealth v. Peterkin*, 538 Pa. 455, 471, 649 A.2d 121, 129 (1994) (prosecutor's comment asking jury to "send out a message about the conduct engaged by that man as he sits passively at that table [that his conduct] cannot be condoned among civilized men" was not improper since it did not exhort jury to return a death sentence as a message to judicial system). Accordingly, appellant's trial counsel cannot be ineffective for failing to raise a meritless claim. *Commonwealth v. Travaglia*, 541 Pa. 108, 140, 661 A.2d 352, 368 (1995) (counsel cannot be deemed ineffective if underlying claim devoid of merit).

While this Court in the past has approved statements concerning the jury sending "messages" with their verdicts in criminal cases, such exhortations, made by either the prosecutor or the defense, in essence urge the jury to ignore their sworn duty to decide a matter only on the proper facts presented in evidence and the applicable law. Accordingly, we advise all parties in criminal matters before any court in the Commonwealth to refrain from such exhortation in the future.

(d) *Education Evidence—Penalty Phase*

Appellant next argues that he is entitled to a new penalty hearing because his trial counsel rendered ineffective assistance when he failed to present evidence concerning his educational history. In particular, appellant asserts that trial counsel should have presented information from evaluations performed at the Glen Mills School indicating that appellant had a high math ability, that he obtained his general equivalency degree at Glen Mills, that he participated in extracurricular activities, and that Glen Mills believed appellant could become eligible for college someday. Appellant believes that such evidence could have established the mitigating circum-

stance of any other evidence of mitigating factors concerning the character of appellant. *See* 42 Pa.C.S. § 9711(e)(8).

Disclosure of the above evidence, however, would have led to the introduction of evidence that Glen Mills School was a disciplinary school where ninety-nine percent of the students attending the school had been adjudicated as delinquents. Also, disclosure of this educational evidence would have revealed that appellant was placed in the school pursuant to an order of the Philadelphia Court of Common Pleas. Moreover, disclosure of this educational evidence would have led to the introduction of a report by the Glen Mills School which made the following assessment of appellant:

> [M]any common behavioral concerns were addressed, those being a poor-self image, a need to develop inner controls to deal with anger and hostility, a need to postpone immediate gratification, a need to develop respect for authority, a need to develop respect for the rights and property of others, a need to develop a higher trust level and interpersonal relationships, a need to improve relationships with family, a need to improve verbal communication skills, a need to learn to share personal feelings and need to develop social maturity.

Based on this evidence, which counters any educational advancements appellant may have achieved at Glen Mills School, we find that counsel had a reasonable basis aimed at protecting appellant's interests in not presenting evidence of appellant's educational history. *See Commonwealth v. Allen,* 501 Pa. 525, 462 A.2d 624 (1983) (counsel cannot be deemed ineffective for failing to pursue an action which would not inure to the benefit of his client). Accordingly, this claim of ineffective assistance of trial counsel must fail.

(e) *Evidence of Employment Background—Penalty Phase*

 Appellant next claims that he is entitled to a new penalty hearing because trial counsel rendered ineffective assistance when he failed to present evidence concerning appellant's employment history in order to support the mitigating circumstance of "any other evidence of mitigation."

We note that appellant fails to describe his employment history other than the assertion that he had a steady employment history.

Here, the trial court, after conducting a post-trial hearing on appellant's ineffectiveness claim, found that trial counsel did speak to appellant about his employment record. However, after speaking with appellant, trial counsel determined that appellant did not have a substantial employment record and there were no employers available to testify on his behalf. The trial court also found that if appellant's employment record had been presented, it would have established that appellant never held any single job for longer than eight months. Moreover, the trial court found that if appellant had testified about his employment record, it would have led to the disclosure that while employed by an Atlantic City casino, appellant was selling drugs in order to supplement his income. Based on these factual findings by the trial court, which are supported by the record, we conclude that trial counsel employed a reasonable trial strategy for not presenting evidence of appellant's employment record since it would have disclosed that appellant did not have a substantial employment history and that he engaged in illegal activities while at one position. *See Commonwealth v. Collins,* 519 Pa. 58, 545 A.2d 882 (1988) (a decision by counsel not to take a particular action does not constitute ineffective assistance is that decision was reasonably based and was not the product of sloth or ignorance). Thus, this claim of ineffectiveness must fail.

### (f) *Failure to Call Witnesses—Penalty Phase*

Appellant next contends that he should be awarded a new penalty hearing because his trial counsel was ineffective for failing to call five witnesses to testify about appellant's good character in order to establish the mitigating circumstance of "any other evidence of mitigation." As noted above, in order to make a claim of ineffectiveness for failure to interview and/or present a witness, appellant must prove: (1) the existence and availability of the witness; (2) counsel's awareness of, or duty to know of the witness; (3) the witness' willingness

and ability to cooperate and appear on behalf of appellant; and (4) the necessity of the proposed testimony in order to avoid prejudice. *Stanley*, 534 Pa. at 300, 632 A.2d at 872.

 The first witness appellant claims trial counsel should have interviewed and presented at his penalty hearing was Wanda Turner. Turner was an ex-girlfriend of appellant who stated that she would have testified for appellant if requested. If Turner had been called as a witness, she would have testified about her relationship with appellant, her observations of his relationship with his children and mother, and appellant's general good character. However, the trial court found that at the time of trial, appellant had lost touch with Turner and that he did not know where she was living. Thus, trial counsel cannot be deemed ineffective if the witness was unavailable and appellant could not provide him with information on how to locate the witness. *See Commonwealth v. Clemmons*, 505 Pa. 356, 365, 479 A.2d 955, 959 (1984) (trial counsel not ineffective when defendant did not provide him with the whereabouts of the witness); *Commonwealth v. Walker*, 540 Pa. 80, 96, 656 A.2d 90, 98 (1995) (reasonableness of counsel's investigative actions and actions during trial depends on the information supplied by the accused). Moreover, the evidence which Turner provided regarding appellant's relationship with his mother, children and other women was essentially the same evidence that was elicited at the penalty hearing from appellant's mother and the mother of one of appellant's children.[15] Trial counsel cannot be deemed ineffective for failing to pursue cumulative evidence of appellant's background. *See Cross*, 535 Pa. at 46, 634 A.2d at 177 (counsel cannot be deemed ineffective for failing to contact defendant's siblings when they would have added only cumulative evidence of defendant's childhood and background). Ac-

15. At the penalty hearing, trial counsel first called appellant's mother to testify about her relationship with appellant and appellant's relationship with his children. After his mother completed her testimony, appellant indicated to the trial court that he did not wish to have any other witness testify on his behalf. However, after consultation with his trial counsel, appellant allowed his trial counsel to call the mother of one of his children to testify about their relationship and his good relationship with his children.

cordingly, trial counsel was not ineffective for failing to interview and call Wanda Turner as a witness at his penalty hearing.

 The next witness that appellant claims trial counsel should have interviewed and presented at his penalty hearing was Jamal Tyson. Tyson had known appellant for approximately nine years before the penalty hearing and he would have testified about appellant's good character in the form of the help appellant gave to Tyson and other members of the community. However, if Tyson had testified, it would have been revealed that Tyson moved from the neighborhood in which appellant lived in 1990 and that from the time Tyson moved until the date of the murder in 1993, Tyson had little or no contact with appellant. Also, trial counsel met with Tyson briefly on the morning of the penalty hearing and decided not to call Tyson or any of appellant's male friends to testify about appellant's character since he was of the opinion that none of appellant's male friends would make a good impression on the jury. Instead, trial counsel believed that evidence of appellant's good character would be most effectively conveyed to the jury through the females in appellant's life such as his mother or the mother of one of his children since they were the most knowledgeable witnesses who were least likely to be impeached by the Commonwealth. We find that such a strategy was reasonable. *See Commonwealth v. Peterkin,* 538 Pa. 455, 461–62, 649 A.2d 121, 124 (1994) (trial counsel not ineffective for not presenting certain mitigating character evidence since trial counsel had legitimate concerns that harmful effect of witnesses outweighed value of proposed character evidence). Accordingly, trial counsel was not ineffective for not calling Tyson as a character witness during the penalty phase of appellant's trial.

Appellant next claims that trial counsel was ineffective for failing to interview and present Jamal Price at his penalty hearing. Price would have offered testimony that appellant treated Price as a brother and that appellant had a good reputation in the community. As noted above, trial counsel employed a reasonable trial strategy in deciding not to present

any of appellant's male friends to testify about appellant's good character since he was of the opinion that none of appellant's male friends would make a good impression on the jury. As for Price specifically, we previously noted that trial counsel was aware that Price was willing to commit perjury in order to support appellant's initial claim that he had an alibi defense for the murder.[16] Also, if Price had testified, the Commonwealth would have been able to impeach Price with his previous conviction for retail theft. *See Commonwealth v. Randall,* 515 Pa. 410, 415, 528 A.2d 1326, 1329 (1987) (witnesses can be impeached with evidence of prior convictions if crime involved dishonesty or false statements). Based on this possible impeachment evidence, trial counsel employed a reasonable strategy in not calling Price as a witness. Accordingly, this claim of ineffectiveness must fail.

Appellant next claims that trial counsel was ineffective for failing to call Alfonso Leak as a witness at his penalty hearing. Leak, appellant's half-brother, would have testified about his relationship with appellant and appellant's good relationship with his family. However, as previously noted, trial counsel's strategy not to present any testimony about appellant's character from appellant's male friends was reasonable. Also, at the time of trial, Leak was incarcerated at a federal prison in Allenwood for a federal conviction of making false statements in connection with purchasing a firearm and that conviction could have been used to impeach Leak's credibility if he had testified. *See Randall, supra.* Moreover, the testimony Leak would have offered about appellant's good character and family relationships would have been cumulative of that offered by appellant's mother and the mother of one of his children. Thus, appellant was not prejudiced by the failure to have Leak testify since counsel cannot be deemed ineffective for failing to pursue cumulative evidence. *See Cross,* 535 Pa. at 46, 634 A.2d at 177 (counsel cannot be deemed ineffective for failing to contact defendant's siblings when they would have added only cumulative evidence of defendant's childhood and background). Accordingly, this claim of ineffectiveness must fail.

**16.** *See* Section IV(b), *supra.*

██ The final witness appellant claims his trial counsel should have interviewed and presented at his penalty hearing was Arnelle Howard. Howard was also the mother of one of appellant's children and she would have testified about appellant's good relationship with their child and her. Such testimony again would have been cumulative of the previous testimony offered at the penalty hearing by the mother of one of appellant's other children and counsel cannot be ineffective for failing to pursue cumulative evidence. *See Cross, supra.* Thus, trial counsel was not ineffective for failing to interview and present Howard as a character witness at his penalty hearing.

### (g) *Failure to Call Appellant—Penalty Phase*

██ Appellant next claims that he is entitled to a new penalty hearing because his trial counsel provided ineffective assistance by not preparing appellant for the penalty phase of trial and for not calling appellant as a witness at the penalty hearing. Appellant asserts that if he had testified at his penalty hearing, he would have testified as to his family relationships, achievements at the Glen Mills School, employment history, participation in community functions and relationships with friends and neighbors.

As for appellant's preparation claim, appellant ignores the findings made by the trial court after its hearing on appellant's ineffectiveness claim. The trial court found that appellant's counsel discussed the penalty phase with appellant, including the presentation of aggravating and mitigating circumstances, from the commencement of his representation of appellant. This finding is supported by the record. Thus, trial counsel was not ineffective for failing to prepare appellant for the penalty hearing.

As for the claim that trial counsel should have presented appellant as a witness at his penalty hearing, appellant's claim rings hollow since he twice made a knowing, intelligent and voluntary waiver of his right to testify at the penalty hearing on the record. In fact, trial counsel was so concerned about appellant's decision not to testify that he had the trial court

conduct a colloquy of appellant twice on this decision. Since appellant refused to take the stand and present any mitigating evidence, appellant trial counsel cannot be deemed ineffective for failing to call appellant as a witness. *See Cross,* 535 Pa. at 44–45, 634 A.2d at 176 (counsel cannot be ineffective for failing to introduce evidence which a client does not want counsel to present). Moreover, if this Court were to allow such an ineffectiveness claim to succeed after appellant made a knowing, intelligent and voluntary waiver of his right to testify, it would have the unwanted and absurd effect of allowing appellant and other defendants to build ineffectiveness claims into their case in order to guarantee themselves a new sentencing hearing should they receive the death penalty. Accordingly, this claim of ineffective assistance of counsel must fail.

### (h) *Jury Instructions—Penalty Phase* [17]

Appellant next alleges that he is entitled to a new penalty hearing because his trial counsel was ineffective for not objecting to the trial court's instruction during the penalty phase of trial as to how the jury was to weigh aggravating and mitigating circumstances for the purpose of determining whether to impose the death penalty. Appellant complains that trial counsel should have objected on the grounds that the instruction given was prejudicial since it infringed upon the sole province of the jury to weigh such factors and the instruction deprived appellant of the right to have each juror weigh and evaluate the various factors according to their individual conscience.

17. Like the ineffectiveness claim because of prosecutorial misconduct concerning the "send a message" statement above (*See* Section IV(c), *supra*), appellant's present counsel on appeal fails to properly frame this issue as an ineffective assistance of counsel claim for failing to object. Instead, appellant's present counsel just frames the issue as one of simple trial court error in giving certain jury instructions. However, as noted above, the relaxed waiver rule for capital cases set forth in *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 50 n. 19, 454 A.2d 937, 955 n. 19 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), compels us to properly frame the issue and resolve it on the record before this Court.

 During its jury charge, the trial court gave the following instruction on weighing the aggravating and mitigating circumstances:

> As I told you earlier, you must unanimously agree on one of the two general findings before you sentence the defendant to death. They are that a finding—they are a finding that there is at least one mitigating circumstance—I'm sorry. I'm sorry.
>
> They are a finding that there is at least one aggravating circumstance and no mitigating circumstances or a finding that there are one or more aggravating circumstances which outweigh any mitigating circumstances. Do not simply count their number. Compare the seriousness and importance of the aggravating with the mitigating circumstances. If you all agree on either one of the two general findings, then you can and must sentence the defendant to death. When voting on the general findings, you are to regard a particular aggravating circumstance as present only if you all agree that it is present. On the other hand, each of you is free to regard a particular mitigating circumstance as present despite what the other jurors may believe. This different treatment of aggravating and mitigating circumstances is one of the law's safeguards against unjust death sentences ... Remember, the Commonwealth must prove any aggravating circumstance beyond a reasonable doubt while the defendant only has to prove mitigating circumstances by a preponderance of the evidence.

(N.T. 10/28/94 at 930–31). When reviewing a challenge to a part of a jury instruction, the Court must review the jury charge as a whole to determine if it is fair and complete. *Commonwealth v. Saunders*, 529 Pa. 140, 144, 602 A.2d 816, 818 (1992). A trial court has broad discretion in phrasing its charge and can choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error. *See Commonwealth v. Prosdocimo*, 525 Pa. 147, 150, 578 A.2d 1273, 1274 (1990).

 Section 3 of the Sentencing Code provides that a jury must return a sentence of death if it determines that one or more aggravating circumstance outweighs any mitigating circumstances. 42 Pa.C.S. § 9711(c)(1)(iv).[18] The Sentencing Code, however, offers no specific formula on how the jury should conduct its weighing of these factors. Thus, this Court has held that the process of weighing the aggravating and mitigating circumstances must be left to the individual jurors. *Commonwealth v. Blount*, 538 Pa. 156, 175–76, 647 A.2d 199, 209 (1994). A trial court improperly infringes upon this process when it instructs the jurors on how to weigh each factor. *Blount*, 538 Pa. at 176, 647 A.2d at 209 (trial court improperly invaded the sole province of the jury when it instructed the jurors that lack of unanimity in finding the existence of a mitigating circumstance must be considered when weighing whether aggravating circumstances outweighed mitigating circumstances).

Here, the trial court's instruction on weighing aggravating and mitigating circumstance, when viewed in the context of the entire charge, did not infringe upon the sole province of each juror to individually weigh the aggravating and mitigating circumstances. Instead, the jury was instructed not to simply count votes, but to individually make the assessment of whether the aggravating circumstances outweighed the mitigating circumstances. Thus, the trial court did not err in giving this instruction. Accordingly, this claim of ineffectiveness must fail since counsel cannot be ineffective for failing to raise a meritless claim. *Commonwealth v. Travaglia*, 541 Pa. 108, 140, 661 A.2d 352, 368 (1995) (counsel cannot be deemed ineffective if underlying claim devoid of merit).

Appellant also claims that he is entitled to a new penalty hearing because his trial counsel was ineffective for failing to object to the trial court's jury instruction which appellant

**18.** The Sentencing Code also provides that a sentence of death must be imposed if the jury finds at least one aggravating and no mitigating circumstances. 42 Pa.C.S. § 9711(c)(1)(iv). This provision, however, is inapplicable in this case since as noted above, the jury here set the penalty at death because the two aggravating circumstances found outweighed the one mitigating circumstance found.

claims improperly defined "preponderance of the evidence." The relevant portion of the trial court's instruction is as follows:

> The Commonwealth must prove any aggravating circumstance beyond a reasonable doubt. This does not mean that the Commonwealth must prove the aggravating circumstance beyond all doubt or to a mathematical certainty. A reasonable doubt is a kind of doubt that would cause a reasonable and sensible person to hesitate before acting upon a matter of importance in his or her own affairs. A reasonable doubt must be a real doubt. It may not be one that a juror imagines or makes up to avoid carrying out an unpleasant duty.
>
> By contrast, the defendant must prove any mitigating circumstance. However, he only has to prove it by the preponderance of the evidence, that is, the greater the weight of the evidence.

(N.T. 10/28/94 at 928–29). Appellant asserts that this definition of preponderance of the evidence was improper because it suggested that appellant had a greater burden of proof than the Commonwealth during the penalty phase since it did not clarify that preponderance is a lesser standard than reasonable doubt.

A review of the record satisfies this Court that the trial court's instructions in this case, when taken as a whole, accurately and correctly conveyed to the jury its task of determining if an aggravating or mitigating circumstance was proven. The trial court instructed the jury that mitigating circumstances need only be proven by a preponderance of the evidence and that a preponderance exists when the evidence for the proposition to be proven is greater than the weight of the evidence against the proposition. Although the trial court's definition is admittedly terse,[19] we find that it sufficiently conveyed to the jury the proper meaning of preponderance of the evidence when viewed in conjunction with the rest

---

**19.** The trial court admitted that this definition of preponderance of the evidence was terse in its memorandum opinion disposing of appellant's matters complained of on appeal.

of the instructions. *See Commonwealth v. Wilson,* 538 Pa. 485, 518–19, 649 A.2d 435, 451–52 (1994) (trial court's instruction that a preponderance of the evidence exists where "one side is more believable than the other side" was not error since when viewed with rest of the charge it conveyed the proper meaning on the defendant's burden of proof). Accordingly, this claim of ineffectiveness must fail since trial counsel cannot be deemed ineffective for failing to raise a meritless claim. *See Travaglia,* 541 Pa. at 140, 661 A.2d at 368 (counsel cannot be deemed ineffective if underlying claim devoid of merit).

### *INDEPENDENT REVIEW OF SENTENCE OF DEATH*

█ Finally, pursuant to 42 Pa.C.S. § 9711(h)(3), this Court has a duty to affirm the sentence of death unless we determine that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.[20]

42 Pa.C.S. § 9711(h)(3). After reviewing the record below, we conclude that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor, but rather was based upon the evidence that appellant killed the victim with premeditation and malice aforethought during the commission of a robbery.

█ In addition, we further find that the two aggravating circumstances found by the jury, that appellant committed the killing while in the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6) (commission of a robbery), and that during the commission of the murder, appellant knowingly created a

20. On June 25, 1997, the Governor signed legislation that repealed all of subsection (h)(3)(iii). Act of June 25, 1997, No. 28, § 1.

grave risk of death to another person besides the victim, 42 Pa.C.S. § 9711(d)(7), were supported by the evidence. The Commonwealth presented evidence that appellant had been convicted of the December 18, 1993, first degree murder and robbery of the victim at the laundromat in Coatesville. Also the evidence showed that appellant fired a .357 magnum revolver twice in the laundromat filled with people; that such bullets could travel for a mile and could have ricocheted if they missed the victim, allowing the jury to infer that the bullets could have hit patrons in the laundromat; and that appellant waved his revolver in a menacing way at the other laundromat patrons as he fled the laundromat. *See Jones,* 542 Pa. at 522–23, 668 A.2d at 519–20 (evidence that bullets intended for victim at grocery store could have struck other patrons in store sufficient to support (d)(7)).

Finally, in accordance with *Zettlemoyer, supra* at 63, 454 A.2d at 961, we are required to conduct a proportionality review of the sentence.

This Court does not treat lightly its statutory and constitutional duties and will conduct an independent evaluation of all cases decided since the effective date of the sentencing procedures under consideration (September 13, 1978). This independent review mandated by 42 Pa.C.S.A § 9711(h)(3)(iii) will utilize all available judicial resources and will encompass all similar cases, taking into consideration both the circumstances of the crime and the character and record of the defendant in order to determine whether the sentence of death is excessive or disproportionate to the circumstances.

*Id.* Moreover, as the United States Supreme Court has stated: "[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences which are grossly disproportionate to the crime." *Harmelin v. Michigan,* 501 U.S. 957, 1001, 111 S.Ct. 2680, 2705, 115 L.Ed.2d 836 (1991).

As this Court has mandated, we have conducted our own proportionality review by independently examining similar cases, by reviewing the facts underlying the first degree

murder, and by considering the sentencing data compiled by the Administrative Office of the Pennsylvania Courts (AOPC) pertaining to similar cases and conclude that the sentence of death imposed upon appellant is not excessive or disproportionate to the sentences imposed in similar cases.[21] *See Commonwealth v. Frey*, 504 Pa. 428, 443, 475 A.2d 700, 707–08, *cert. denied*, 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984).

Accordingly, we affirm the verdict and sentence of death imposed upon appellant by the Court of Common Pleas of Chester County.[22]

---

**21.** *See, e.g., Commonwealth v. Walker*, 540 Pa. 80, 656 A.2d 90, *cert. denied*, —— U.S. ——, 116 S.Ct. 156, 133 L.Ed.2d 100 (1995) (judgment of sentence of death affirmed where jury found as aggravating circumstances that murder was committed in the perpetration of a felony and that during the commission of the murder, appellant knowingly created a grave risk of death to another person in addition to the victim and as mitigating circumstance that defendant was under the influence of extreme mental or emotional disturbance); *Commonwealth v. Albrecht*, 510 Pa. 603, 511 A.2d 764 (1986), *cert. denied*, 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987) (judgment of sentence of death affirmed where jury found as aggravating circumstance that during the commission of the murder, appellant knowingly created a grave risk of death to another person in addition to the victim and as mitigating circumstances that defendant had no significant history of prior criminal convictions, that the defendant was under the influence of extreme mental or emotional disturbance and an unspecified circumstance under the catchall any other evidence of mitigation); and *Commonwealth v. Szuchon*, 506 Pa. 228, 484 A.2d 1365 (1984) (judgment of sentence of death affirmed where jury found the aggravating circumstances that murder was committed in the perpetration of a felony and that during the commission of the murder, appellant knowingly created a grave risk of death to another person in addition to the victim outweighed mitigating circumstances that defendant had no significant history of prior criminal convictions, that the defendant was under the influence of extreme mental or emotional disturbance, defendant's capacity to conform his conduct to the law was substantially impaired and the influence of drugs and alcohol upon the defendant's behavior).

**22.** The Prothonotary of this Court is directed to immediately transmit to the Governor's office the full and complete record of the trial, sentencing hearing, imposition of sentence and review by the Supreme Court pursuant to 42 Pa.C.S. § 9711(i).