J-S05027-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DARLA MARIE CARRINGTON :
:
Appellant : No. 350 MDA 2019

Appeal from the PCRA Order Entered January 25, 2019,
in the Court of Common Pleas of Dauphin County,
Criminal Division at No(s): CP-22-CR-0000941-2014.

BEFORE: SHOGAN, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED: MAY 6, 2020**

Darla Marie Carrington appeals from the order dismissing her petition

filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

The relevant factual and procedural history can be summarized as

follows. In 2014, police responded to an emergency call from Carrington's

apartment. Upon their arrival, police discovered the body of Dennis Green,

who had been struck several times around the head, face, and body with a

hammer, and stabbed five times with a butcher knife, which was lodged in his

chest. Carrington was present at the apartment with her two minor

daughters. Although Carrington initially spoke with police, she fled the scene.

She was later apprehended, and admitted to the homicide. She claimed that

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

she had been smoking crack cocaine with the decedent, and that she was high at the time she attacked the decedent. Carrington was arrested and charged with criminal homicide.

On January 12, 2016, pursuant to a negotiated plea agreement, Carrington pled guilty to third-degree-murder. Pursuant to the plea agreement, the parties acknowledged that Carrington's maximum sentence could not exceed forty years (which is the statutory maximum), and agreed that the trial court would determine her minimum sentence within a range of thirteen to twenty years. Sentencing was deferred for the preparation of a presentence investigation report ("PSI"). On April 19, 2016, the trial court conducted a sentencing hearing and sentenced Carrington to serve twenty to forty years in prison. This Court affirmed Carrington's judgment of sentence on March 29, 2017. *See Commonwealth v. Carrington*, 168 A.3d 367 (Pa. Super. 2017) (unpublished memorandum).

On January 9, 2017, while her direct appeal was pending, Carrington filed a *pro se* PCRA petition, which the trial court dismissed without prejudice as prematurely filed. After this Court affirmed Carrington's judgment of sentence, the PCRA court appointed Carrington counsel, who filed a timely PCRA petition, and requested leave to file an amended petition. PCRA counsel later filed a *Turner*/*Finley*[2] "no merit" letter and a petition to withdraw from

_____

[2] *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

- 2 -

representation. Carrington did not file a response to the **Turner**/**Finley** no-merit letter. The PCRA court granted counsel's petition to withdraw, and dismissed the PCRA petition on January 25, 2019. Carrington filed a timely notice of appeal. Both Carrington and the PCRA court complied with Pa.R.A.P. 1925.

Carrington raises the following issues for our review:

i.    Did the PCRA court err in determining that trial counsel was not ineffective for failing to ensure that . . . Carrington entered into a knowing and understanding guilty plea since the guilty plea colloquy was defective?

ii.   Did the PCRA court err in determining that trial counsel was not ineffective for failing to present mitigating circumstances at sentencing of [the decedent's] prior conviction of a violent crime against children and . . . prior arrest for sexual assault, to evidence that [the decedent] was the aggressor where . . . Carrington's actions were taken under extreme duress in [the decedent's] unlawful force against . . . Carrington's person and . . . [her] minor daughters?

Carrington's Brief at 8 (unnecessary capitalization omitted).

Our standard of review is as follows:

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

- 3 -

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

When a petitioner alleges trial counsel's ineffectiveness in a PCRA petition, she must prove by a preponderance of the evidence that her conviction or sentence resulted from ineffective assistance of counsel "which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."  42 Pa.C.S.A. § 9543(a)(2)(ii).  Additionally, the petitioner must demonstrate:

> (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error.   To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.  Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction.  Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness[,] the petitioner must advance sufficient evidence to overcome this presumption.

*Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016) (internal citations and quotation marks omitted).  A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim.  *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

In her first issue, Carrington contends that her trial attorneys were ineffective because they failed to object to a defective plea colloquy.  She

claims that, during the plea hearing, she "expressed a clear lack of understanding about the plea negotiations." Carrington's Brief at 32. Carrington argues that she was not questioned during the colloquy, by either the trial court or her attorneys, to determine whether promises had been made to Carrington, and what she expected if she entered a guilty plea. *Id*. Specifically, she claims that her attorneys "[n]ever interjected during the colloquy to allow . . . Carrington opportunity to say that she was pleading guilty because she was promised by her attorneys that [the trial court] would sentence her to 13 to 40 years [of] incarceration in exchange for her guilty plea."[3] *Id*. at 34. Carrington claims that "[she] told the trial judge that she did not know what was happening during the guilty plea hearing, and attempted to ask a clarifying question in order to understand her rights and her potential sentencing exposure." *Id*. at 35. In support of her argument, Carrington points to the following exchange during the oral guilty plea colloquy:

[Prosecutor]: Do you have any questions about anything?

_____

[3] This argument varies from the issue Carrington raised in her *pro se* PCRA petition and in her *pro se* Pa.R.A.P. 1925(b) concise statement. In those filings, she claimed that she believed that she would be sentenced to a prison term of thirteen to twenty years upon the entry of her guilty plea. *See Pro Se* PCRA Petition, 1/9/17, at 3; *Pro Se* Concise Statement, 5/8/19, at 1. Although an appellant is generally limited to the issues raised in the lower court, and in the concise statement, *see* Pa.R.A.P. 302 and Pa.R.A.P. 1925(b)(3)(vii), this insignificant variance in Carrington's argument does not affect our disposition, as the result would be the same under either scenario.

- 5 -

[Carrington]: I didn't - - I don't know if I am able to speak or – -

The Court: You are.

[Defense counsel]: Don't - -

The Court: Well, I would talk to your attorneys.

[Carrington]: No.

N.T. Oral Guilty Plea Colloquy, 1/12/16, at 6-7 (some capitalization omitted).

Carrington argues that her counsel should have followed up the oral colloquy and answered her questions on the record. Carrington points out that she has an eleventh grade education and no formal legal training. She claims that she showed an ignorance about the proceedings at the sentencing hearing, where she expressed a belief that she would be released from custody after twenty-eight months in prison upon the entry of her guilty plea. In particular, she points to the following statement that she made to the court at her sentencing hearing: "I am voluntarily asking for this [guilty] plea. Your Honor. Please. It's been 28 months. I'm - - please. I'm asking for this to be done and over with." N.T. Sentencing, 4/19/16, at 8. Carrington asserts that, despite her apparent confusion, the sentencing court again made no effort to determine what promises had been made to Carrington in exchange for her guilty plea. She contends that her guilty plea cannot be sustained because it was not knowing, intelligent, or voluntary due to her counsel's ineffectiveness.

"A criminal defendant has the right to effective counsel during a plea process as well as during trial." ***Commonwealth v. Hickman***, 799 A.2d 136, 141 (Pa. Super. 2002). However, when the ineffectiveness of counsel is claimed in connection with the entry of a guilty plea, a petitioner may only obtain relief where "counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating [the] entry of an unknowing, involuntary, or unintelligent plea." ***Commonwealth v. Moser***, 921 A.2d 526, 530 n.3 (Pa. Super. 2007) (*en banc*) (internal citations and quotations omitted).

When determining whether a defendant has entered into a guilty plea knowingly, voluntarily, and intelligently, the court should consider the oral and written plea colloquy and off-the-record communications between the defendant and counsel. ***Commonwealth v. Allen***, 732 A.2d 582, 588-89 (Pa. 1999). During a guilty plea, the court must conduct an inquiry with a defendant on the record which addresses the following: (1) does the defendant understand the nature of the charges; (2) is there a factual basis for the plea; (3) does the defendant understand her right to a jury trial; (4) does the defendant understand she is presumed innocent until proven guilty; (5) is the defendant aware of the permissible range of sentences; and (6) is the defendant aware the judge is not bound by the terms of any plea agreement. ***See Commonwealth v. Muhammad***, 794 A.2d 378, 383 (Pa. Super. 2002); ***see also Commonwealth v. Hallock***, 722 A.2d 180, 182 (Pa. Super. 1998); Pa.R.Crim.P. 590 Comment. The express purpose for

conducting this colloquy is to ensure a defendant understands the nature of the charges to which she is pleading guilty and the rights she is waiving by pleading guilty. ***Commonwealth v. Carter***, 656 A.2d 463, 465 (Pa. 1995).

The questioning of a defendant may be conducted by the judge, an attorney for either party, or by written colloquy. ***Commonwealth v. Harris***, 589 A.2d 264, 265 (Pa. Super. 1991). If the written colloquy is used, it must be completed and signed by the defendant and made part of the record. ***Id***. It must also be supplemented by some oral explanation. ***Id***.

A defendant has the duty to truthfully answer all questions at the time of the guilty plea. ***Commonwealth v. Vesay***, 464 A.2d 1363, 1368 (Pa. Super. 1983). Consistent with this principle, defendants are bound by the statements they make during their plea colloquy, and may not assert grounds for withdrawing the plea that contradict statements made when they pleaded guilty. ***Commonwealth v. Barnes***, 687 A.2d 1163, 1167 (Pa. Super. 1996).

Here, our review discloses that Carrington completed extensive guilty plea colloquies, both written and oral, covering all necessary topics for a valid plea colloquy. ***See*** N.T. Sentencing Hearing, 4/19/16, at 7-10; N.T. Guilty Plea Hearing, 1/12/16, at 2-7; N.T. Written Guilty Plea Colloquy, 1/12/16, at 1-3.[4]

---

[4] Following the entry of Carrington's guilty plea, she was interviewed in connection with the preparation of the PSI. In her interview, Carrington indicated that she had been coerced into pleading guilty. N.T. Sentencing,

Regarding Carrington's specific claim on appeal that she believed that she was pleading guilty to a total prison term of thirteen to forty years (rather than a minimum prison term in the range of thirteen to twenty years, with a maximum not to exceed forty years), the record indicates otherwise. At the guilty plea colloquy, the prosecutor conducted the following oral colloquy of Carrington wherein she confirmed her understanding of the specific terms of the plea agreement.

> [The prosecutor]: And you understand that while the Commonwealth and the defense have reached an agreement regarding the terms, ultimately, it's up to this court whether or not to accept the terms.
>
> [Carrington]: Yes, ma'am.
>
> [The prosecutor]: And there is a portion of it that is open, and it is within the judge's discretion, your minimum sentence.
>
> [Carrington]: Yes, ma'am.:
>
> [The prosecutor]: Do you understand that?
>
> [Carrington]: Yes, ma'am.

_____

4/19/16, at 5-6. At sentencing, the court indicated that it would not accept Carrington's guilty plea if it had been coerced, noting Carrington's comment in the PSI that "[i]f I had Johnny Cochran money, I would not be in this situation." *See id*. at 5, 6. In response, Carrington attributed her comments in the PSI regarding coercion to "stress," and indicated to the court that she was voluntarily asking to plead guilty. *Id*. at 8. The sentencing court then conducted a second oral colloquy to ensure that Carrington was knowingly, voluntarily, and intelligently entering her plea. *Id*. at 8-10. Based on Carrington's responses to the second oral colloquy, the sentencing court concluded that Carrington's guilty plea was properly entered, and proceeded to sentence her. *Id*. at 10-11.

[The prosecutor]: And the terms of the negotiated plea agreement are as follows. . . . [Y]ou are charged with one count of criminal homicide for the death of Dennis Green. The Commonwealth has agreed to allow you to plead to third-degree-murder in exchange for a minimum sentence between 13 and 20 years. Is that your understanding regarding the charge of third-degree-murder?

[Carrington]: Yes, ma'am.

[The prosecutor]: *And the minimum sentence is up to the court, between 13 and 20 years*.

[Carrington]: *Yes, ma'am*.

[The prosecutor]: *And you understand that the agreement also is that the maximum is 40 years*?

[Carrington]: *Yes, ma'am*.

* * * *

[The prosecutor]: And that's your understanding regarding the negotiated plea?

[Carrington]: Yes, ma'am.

N.T. Oral Guilty Plea Colloquy, 1/12/16, at 2-4 (emphasis added).[5] The fact that Carrington was questioned regarding her understanding of the plea agreement by the prosecutor, rather than by the trial court or defense counsel, is of no moment. *See Harris*, 589 A.2d at 265 (holding that the questioning of a defendant may be conducted by the judge, an attorney for either party, or by written colloquy).

_____

[5] Notably, at the inception of the sentencing hearing, the prosecutor again referenced the terms of the plea agreement, explaining that Carrington's sentence "could go as low as 13 to 26 years, or as high as 20 to 40 years." N.T. Sentencing Hearing, 4/19/16, at 2.

Moreover, as noted above, defendants are bound by the statements they make during their plea colloquy, and may not assert grounds for withdrawing the plea that contradict statements made when they pleaded guilty. **Barnes**, 687 A.2d at 1167. Consequently, Carrington is bound by the statements she made during her plea colloquy, including her statements that she understood that the plea agreement provided that the trial court would determine her minimum sentence in the range of thirteen to twenty years, and that her maximum sentence would not exceed forty years. **See id**.

The fact that, when generally asked whether she had a "any questions about anything," Carrington initially responded "I didn't – I don't know if I'm able to speak," does not negate her prior statements regarding the specific terms of the plea agreement. **See** N.T. Guilty Plea Hearing, 1/12/16, at 6-7.[6] As Carrington confirmed her understanding of the terms of the plea agreement in open court while under oath, she is bound by those statements and her attorneys cannot be deemed ineffective for failing to argue otherwise. **See Commonwealth v. Hall**, 701 A.2d 190 (Pa. 1997) (holding that counsel

_____

[6] Similarly, Carrington's comments at the sentencing hearing that "I am voluntarily asking for this [guilty] plea. Your Honor. Please. It's been 28 months. I'm - - please. I'm asking for this to be done and over with," do not negate her prior statements confirming her understanding of the specific terms of the plea agreement. **See** N.T. Sentencing, 4/19/16, at 8. Moreover, when considered in the context of the court's hesitation to accept Carrington's guilty plea, these comments indicate her desire to convince the court of the voluntary nature of her plea so that she could proceed to be sentenced, rather than a belief that she would be released from incarceration upon sentencing. **See id**. at 4-8.

- 11 -

cannot be found ineffective for failing to raise a meritless claim).  Thus, Carrington's first issue warrants no relief.

In her second issue, Carrington claims that her attorneys were ineffective for failing to investigate the decedent's reputation for bad character for violence against children and sexual violence.  Carrington specifically contends that her attorneys were ineffective for failing to introduce, as a mitigating circumstance at sentencing, evidence of the decedent's criminal history, which included a conviction for simple assault (against a child under twelve) and an arrest for aggravated indecent assault.  According to Carrington, the decedent's criminal history would have provided substantial mitigating evidence because it would have bolstered her claim that the decedent was trying to rape Carrington and her minor daughters, and that Carrington attacked the decedent under extreme duress and in defense of herself and her minor daughters.

Our review of the record indicates that this issue was insufficiently developed before the PCRA court.  In her *pro se* PCRA petition, Carrington provided the following brief description of her claim "I was informed of the victim's (Dennis Green) criminal background by my public defender, and none of this information was made known to the judge."  *Pro Se* PCRA Petition, 1/9/17, at 3.  Thereafter, Carrington's PCRA counsel filed a petition in which he superficially addressed the issue as follows: "The victim, Dennis Green, criminal history, character, toxicology report was never presented to the trial

court. This was mitigation evidence that should have been presented to the trial court." Counseled PCRA Petition, 4/27/18, at ¶ 17(a)(2)(d). In his **Turner**/**Finley** no merit letter, PCRA counsel made no reference to the decedent's criminal history, and instead raised a claim that trial counsel was ineffective for not presenting evidence of the decedent's involvement in prostitution and illicit drug use. **See Turner**/**Finley** No-Merit Letter, 10/18/18, at 12.

Nowhere in the PCRA court record is there any description of the crimes that the decedent allegedly committed, nor any argument as to why trial counsel should have brought the decedent's criminal history to the sentencing court's attention. Indeed, the PCRA court record contains no documentation evidencing the decedent's actual conviction history.[7] Given the woefully underdeveloped nature of the claim in the court below, it is no surprise that the PCRA court viewed Carrington's second ineffectiveness claim as pertaining to trial counsel's failure to introduce evidence of the decedent's character. **See** PCRA Court Opinion, 1/25/19, at 7 (wherein the PCRA court stated "[w]e believe that the decision made against introducing character evidence about the [decedent] was appropriate").

---

[7] While we are mindful that PCRA counsel filed a **Turner**/**Finley** no-merit letter and petitioned to withdraw from representation, he nevertheless explained to Carrington that she had the option to retain private counsel or proceed *pro se* in order to advance any arguments that she believed to be meritorious. **See** Letter to Carrington, 10/17/18, at 1. Carrington did not pursue these options.

As indicated above, counsel is presumed to be effective, and the petitioner must advance sufficient evidence to overcome this presumption. *See Johnson*, 139 A.3d at 1272. In our view, Carrington failed to advance sufficient evidence to overcome the presumption of her counsel's effectiveness with respect to her claim that they should have presented decedent's criminal history as mitigating evidence to the sentencing court. *See id*.

Moreover, the PCRA court determined that Carrington's trial attorneys were not ineffective because they prepared a sentencing memorandum which provided ample mitigating evidence on Carrington's behalf. *See* PCRA Court Opinion, 1/25/19, at 7 (stating "[b]efore the time of sentencing, [Carrington's] trial counsel submitted a memorandum that provided a plethora of information about Ms. Carrington that would lend to a mitigated sentence"). Our review of the record confirms that Carrington's counsel prepared a sentencing memorandum which discussed her exposure at a young age to domestic violence and rape, teenage pregnancies, an abortion, and her struggles with depression, bipolar disorder, suicidal thoughts, and addictions to drugs and alcohol. *See* Sentencing Memorandum, 4/18/16, at 2-4. The memorandum also highlighted Carrington's remorse for her crime, and her efforts at rehabilitation while in prison. *Id*. at 6-7. As the PCRA court's ruling is

supported by the record, we affirm its determination that Carrington's second issue warrants no relief.[8]

Order affirmed.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/06/2020

---

[8] To the extent that our determination differs from that of the PCRA court, we may affirm the PCRA court's decision on any grounds if the record supports it. *See Ford*, 44 A.3d at 1194.