J-S17018-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DANIEL EUGENE CONRAD | |
| Appellant | No. 1906 MDA 2019 |

Appeal from the PCRA Order Entered October 15, 2019
In the Court of Common Pleas of Lebanon County
Criminal Division at No.: CP-38-CR-0000007-2017

BEFORE:  PANELLA, P.J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:          **FILED JULY 23, 2020**

Appellant Daniel Eugene Conrad appeals from the October 15, 2019 order of the Court of Common Pleas of Lebanon County ("PCRA court"), which denied his petition under the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-46.  Upon review, we affirm.

Because of an incident that occurred on September 2, 2016, Appellant was charged with driving under the influence (DUI) of a Schedule II or III controlled substance (methamphetamine), DUI—controlled substance, and driving while operating privilege is suspended or revoked.[1]  The case proceeded to a jury trial, at which only the Commonwealth offered testimony. First, the Commonwealth called to the stand Trooper Morgan Bright, Pennsylvania State Police.  Trooper Bright testified that, on September 2,

---

[1] 75 Pa.C.S.A. §§ 3802(d)(1)(ii), (d)(2), and 1543(a), respectively.

2016, he was assigned to patrol duty when he responded to a dispatch at 11:40 p.m. of someone being followed. N.T. Trial, 4/18/18, at 7-8. Trooper Bright testified that he responded to 6 South Lancaster Street in Jonestown Borough, Lebanon County, which was in his jurisdiction. *Id.* at 8. Upon arrival, Trooper Bright observed Appellant standing alone outside a legally parked black Chevrolet S-10 pickup truck. *Id.* According to Trooper Bright, no one else was around Appellant. *Id.* He recalled that the parking space the truck occupied was right off a public road and could only be accessed by travelling on a public road. *Id.* at 8-9. Trooper Bright testified that he had passed the spot where the truck was parked approximately five to ten minutes prior to responding to the dispatch. *Id.* at 17. At that time, Trooper Bright did not observe the pickup truck in the parking spot. *Id.*

Trooper Bright testified that he spoke with Appellant who related that, all night, he was being followed by "unknown individuals" "from Hazelton all the way down here to Jonestown." *Id.* at 9. Appellant did not provide any specifics on or description of the individuals. *Id.* According to Trooper Bright, Appellant remarked that the ordeal had been on the news and he "had been ducking and dodging" the individuals. *Id.* Trooper Bright recalled that Appellant was "fidgety and nervous" and his speech was "paranoid and repetitive." *Id.* Trooper Bright testified that, based upon his training and experience, he recognized Appellant's mannerisms to be consistent with methamphetamine use. *Id.* at 10. He explained that paranoia and hallucinations are indicators of methamphetamine use. *Id.* at 16.

Trooper Bright then asked Appellant whether he had used drugs, Appellant responded in the negative. *Id.* at 10. Thereafter, Trooper Bright performed a field sobriety test on Appellant. Trooper Bright conducted a "check of his eyes looking for different indicator of impairment, as well as the Modified Rhomberg Balance Test, the results of which were consistent with drug impairment. *Id.* at 11-14. Trooper Bright explained: "The count was off. He had a fast count, which was consistent with a stimulant such as methamphetamine. I observed body tremors, eyelid tremors also consistent." *Id.* at 14. Trooper Bright recalled that Appellant refused to perform further testing on account of an alleged foot injury. *Id.* at 14-15. Trooper Bright testified that he then asked Appellant again whether he had taken any drugs. *Id.* at 15. According to Trooper Bright's testimony, Appellant remarked that "he did one bump of meth around 10 p.m." *Id.* Trooper Bright explained a bump of meth as "basically like a single use. Sometimes, they will put it on their hand, snort it off an object." *Id.*

Trooper Bright testified that he asked Appellant several times whether he had driven the pickup truck. *Id.* at 16. Each time, according to Trooper Bright, Appellant answered in the affirmative. *Id.* Appellant also admitted to driving the truck prior to calling the police. *Id.* Trooper Bright explained that the reason he asked Appellant multiple times whether he was driving the truck was to "verify that he was actually in full control of that vehicle within a reasonable close amount of time since I did not observe him driving the vehicle at any point." *Id.* at 16-17. Appellant had no companions with him that

- 3 -

night—he was alone. *Id.* at 22. Trooper Bright recalled removing a set of keys from Appellant, but was uncertain if a vehicle key was on the key ring. *Id.* at 22-23. The Commonwealth played for the jury a video of the traffic stop in question that seemingly confirmed Trooper Bright's account of the incident. *Id.* at 18-20.

The Commonwealth next offered the testimony of Trooper James Paparella. Trooper Paparella testified that, on September 2, 2016, he was on patrol duty with Trooper Bright when they received and responded to the dispatch at 6 South Lancaster Street in Jonestown. *Id.* at 31. He testified that he did not recall the pickup truck being in the area when he and Trooper Bright had driven through it approximately 10 minutes prior to responding to the dispatch. *Id.* at 32. Trooper Paparella recalled that when they encountered Appellant, he appeared "extremely nervous," "repetitive," and "seemed to be paranoid with what he was speaking about." *Id.* at 33. Trooper Paparella testified that he heard Appellant's admission to methamphetamine use and noticed nobody else with or around Appellant. *Id.* Trooper Paparella recalled that Appellant "said that he had spoken to different officers and that there was helicopters involved. It was on the news, that we should have known about it. But there was no reports that we found that were legitimate." *Id.* at 34.

Trooper Paparella testified that he ran the pickup truck's plate and the truck came back registered to Appellant. *Id.* At the trial, the parties stipulated to the following facts:

- 4 -

> On September 2, 2016, at approximately 11:50 p.m., [Appellant] was placed under arrest for DUI by [Trooper Bright]. [Appellant] consented to legal blood draw. [Appellant] was transported to the Good Samaritan Hospital for blood testing. The blood was drawn at 12:34 a.m. on September 3, 2016, by McKenzie Schneck, a phlebotomist at the hospital. [Appellant's] blood was subsequently submitted to the MedTox Laboratories for analysis. MedTox Laboratories is an approved testing facility for detecting the presence of controlled substance pursuant to 46 Pa. Bulletin 76. [Appellant's] w-blood sample was analyzed and certified by Karla J. Walker, Director with MedTox Laboratories at 3:51 p.m. on September 13, 2016. Dr. Walker has been appropriately educated and trained to conduct such work. Her education and training has been memorialized in her Curriculum Vitae[.] And Dr. Walker's testing revealed the presence of methamphetamine, a Schedule II controlled substance in amount of 42 nanograms per milliliter and amphetamine, Schedule II controlled substance, a metabolite of methamphetamine in the amount of 11 nanograms per milliliter, in [Appellant's] blood. . . . And at all times, [Appellant's] blood sample was appropriately maintained and preserved for chain of custody purposes.

*Id.* at 36-37. The jury found Appellant guilty of DUI of a Schedule II or III controlled substance (methamphetamine) and driving while operating privilege was suspended or revoked, a summary offense. The jury, however, acquitted Appellant of DUI—controlled substance. On June 6, 2018, the trial court sentenced Appellant to, *inter alia*, two to five years' imprisonment for DUI.[2] Appellant filed post-sentence motions, which the court denied on October 10, 2018. Appellant did not file a direct appeal.

On April 22, 2019, Appellant *pro se* filed the instant PCRA petition, his first, alleging several ineffective assistance of counsel claims. The PCRA court appointed counsel who filed an amended PCRA petition on May 23, 2019. Following evidentiary hearings, the PCRA court, on October 15, 2019, denied Appellant's petition for collateral relief. Appellant appealed. The PCRA court

---

[2] The court imposed only a fine of $200.00 for the summary offense.

directed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant complied, raising five assertions of error. In response, the PCRA court issued a Pa.R.A.P. 1925(a) opinion, concluding that Appellant is not entitled to relief.

On appeal,[3] Appellant presents five issues for our review.

> [I.] Whether Appellant was denied his constitutionally guaranteed right to effective representation when trial counsel failed to adequately defend Appellant by failing to argue a defense to the charges and failing to properly cross-examine witnesses?
>
> [II.] Whether Appellant was denied his constitutionally guaranteed right to effective representation when trial counsel failed to subpoena Ms. Simcott to testify at trial that Appellant was not in control of the key to the vehicle and therefore was not in control of the vehicle. [Trial court] also failed to call additional witnesses?
>
> [III.] Whether Appellant was denied his constitutionally guaranteed right to effective representation when trial counsel failed to request the complete jury trial transcript and therefore was unable to appeal the issue of inadequate jury instructions as it related to the elements of DUI?
>
> [IV.] Whether Appellant was denied his constitutionally guaranteed right to effective representation when trial counsel failed to allow Appellant to testify?
>
> [V.] Whether Appellant was denied his constitutionally guaranteed right to effective representation when trial counsel failed to object to the following comments made by the Commonwealth at trial: "Defendant didn't take the stand," and "Defendant was handcuffed and placed into the back of the vehicle"?

Appellant Brief at 4-5.

---

[3] "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination 'is supported by the record and free of legal error.'" *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014) (quoting *Commonwealth v. Rainey*, 928 A.2d 215, 223 (Pa. 2007)).

As stated, Appellant's claims before us involve ineffective assistance of counsel. A PCRA petitioner is entitled to relief if he pleads and proves that prior counsel rendered ineffective assistance of counsel. 42 Pa.C.S.A. § 9543(a)(2)(ii). "To prevail on an [ineffectiveness] claim, a PCRA petitioner must plead and prove by a preponderance of the evidence that (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for acting or failing to act; and (3) the petitioner suffered resulting prejudice." ***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 780 (Pa. Super. 2015) (*en banc*). "A petitioner must prove all three factors of the "***Pierce***[4] test," or the claim fails." ***Id.*** Put differently, "[t]he burden of proving ineffectiveness rests with Appellant." ***Commonwealth v. Chmiel***, 889 A.2d 501, 540 (Pa. 2005).

Instantly, after careful review of the record, and the relevant case law, we conclude that the PCRA court accurately and thoroughly addressed the merits of Appellant's issues. ***See*** PCRA Court Opinion, 1/2/20, at 8-16. The PCRA court determined that Appellant's first issue, whether trial counsel adequately defended him with respect to the Commonwealth's argument that Appellant had driven the pickup truck prior to the troopers' arrival, lacked merit. ***Id.*** at 10-11. The court reasoned that counsel not only cross-examined the troopers about whether Appellant possessed the keys to the truck on the night in question, but also argued to the jury that insufficient evidence existed

---

[4] ***Commonwealth v. Pierce***, 527 A.2d 973 (Pa. 1987).

to conclude that Appellant was operating the truck. Additionally, trial counsel credibly testified at the PCRA hearing that Appellant admitted to her that he had been driving the truck. *Id.* The PCRA court also found Appellant's second issue to lack merit. *Id.* at 11-13. Appellant alleged that trial counsel was ineffective in failing to subpoena Melissa Simcott to establish that she, not him, had driven the truck on the night at issue. The PCRA court found that Appellant never mentioned Ms. Simcott's name to trial counsel or law enforcement at any point prior to or at the time of trial. Additionally, the court determined that, despite multiple opportunities over a period of three months, Appellant was either unable or unwilling to call Ms. Simcott to testify at the PCRA hearing to offer the alleged exculpatory evidence. *Id.* at 12-13.

With respect to Appellant's third issue, relating to jury instructions, the PCRA court concluded that it too lacked merit. The court explained that the jury was instructed properly on the DUI charge. *Id.* at 13-14. Similarly, Appellant also does not obtain relief on his fourth issue. Appellant argues that his trial counsel prevented him from testifying at trial. The PCRA court found Appellant's allegations to be self-serving and incredible. In crediting counsel's testimony, the PCRA court concluded that Appellant, on his own volition, decided to remain silent during trial. *Id.* at 14. The court found that trial counsel did not coerce Appellant into reaching this decision. Furthermore, the PCRA court also found that Appellant had *admitted* to counsel throughout the proceedings that he drove the pickup truck. Finally, the PCRA court concluded that Appellant's fifth issue also lacked merit. Appellant argues that the

Commonwealth stated to the jury during closing argument that Appellant "didn't take the stand." The PCRA court found this argument to be incredible and inconsistent with the record. The court found that the transcript "establishes beyond any doubt that the prosecutor never mentioned or sought to take advantage of [Appellant's] failure to testify at trial." *Id.* at 16.

In sum, we conclude that Appellant's ineffective assistance of counsel claims lack merit. Accordingly, we affirm the PCRA court's October 15, 2019 order denying Appellant PCRA relief. We further direct that a copy of the PCRA court's January 2, 2020 Rule 1925(a) opinion be attached to any future filings in this case.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/23/2020

# IN THE COURT OF COMMON PLEAS LEBANON COUNTY PENNSYLVANIA

## CRIMINAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

   v.

DANIEL CONRAD

:
:
:
:
:
:
:
:

NO. CP-38-CR-0007-2017

## APPEARANCES

Benjamin Baker, Esquire          For Commonwealth of Pennsylvania
DISTRICT ATTORNEY'S OFFICE

Melissa Montgomery, Esquire      For Daniel Conrad

## OPINION BY CHARLES, J., January 2, 2020

After being convicted of Driving Under the Influence of a Controlled Substance, the DEFENDANT has filed a Post-Conviction Relief Act (PCRA) Petition seeking to re-write history. The DEFENDANT now claims that his trial counsel should have proven that he was not operating a motor vehicle on October 6, 2016. He makes this bold claim...

- *Despite the fact that police located the DEFENDANT – and no one else – directly next to his Chevy S-10 pick-up truck;*

1

- *Despite the fact that the pick-up truck was located in a parking space that was vacant five (5) to ten (10) minutes prior to arrival by police;*

- *Despite the fact that the DEFENDANT told police officers that he had been driving the pick-up truck and had been followed "all night from Hazelton down here to Jonestown"; and*

- *Despite the fact that he told his own lawyer on multiple occasions that he had been driving the pick-up truck.*

For reasons that we will articulate in more detail within the body of this Opinion, we categorically reject the DEFENDANT's recent and self-serving proclamations that someone else was operating the vehicle.


I.   **FACTS**

On October 6, 2016, Daniel Conrad (hereafter DEFENDANT) was charged with one (1) count of Driving Under the Influence (DUI) of a Schedule II or II Controlled Substance, one (1) count of DUI of a Controlled Substance – Incapable of Safe Driving, and one (1) count of Driving While Operating Privileges are suspended or Revoked.  These charges related to an incident that occurred on September 2, 2016, when Trooper Morgan Bright (hereafter BRIGHT) and Trooper James Paparella (hereafter PAPARELLA) responded to a dispatch of someone being followed at around 11:40pm, at 6 South Lancaster Street in Jonestown Borough, Lebanon County, Pennsylvania. (N.T. 7-8)  DEFENDANT was standing outside of a black Chevy S-10 pickup truck.  The truck was legally parked in a parking stall facing in towards the curb. (N.T. 8).  The parking spot

2

was within a Jonestown Borough open parking lot accessible only by traveling on a roadway in Pennsylvania. (N.T. 9). That parking spot was vacant 10-15 minutes before the dispatch. (N.T. 17).

BRIGHT spoke to DEFENDANT. DEFENDANT related to BRIGHT that he was being followed by unknown individuals "all night from Hazelton all the way down here to Jonestown." BRIGHT indicated that DEFENDANT "mentioned that it had been on the news, and that he had been ducking and dodging them around the Borough all night." (N.T. 9).

Based on BRIGHT's training and experience, BRIGHT assessed that DEFENDANT presented actions that are consistent with methamphetamine drug use. These actions included paranoia and repetitive speech, fidgeting movements and nervous activity. BRIGHT asked DEFENDANT if he had used drugs and DEFENDANT initially said no. (N.T. 10). DEFENDANT was unaware of the time of day, believing it was actually two and one-half hours earlier than the actual time of nearly midnight. DEFENDANT related that he was tired from driving all day. (N.T. 10-11). BRIGHT again asked DEFENDANT if he had use methamphetamine. DEFENDANT again denied use.

BRIGHT performed field sobriety tests on DEFENDANT. BRIGHT conducted a "check of his eyes looking for different indicators of impairment, as well as the modified Romberg Balance Test." (N.T. 11). BRIGHT observed that DEFENDANT displayed symptoms showing "some indication of impairment" to be consistent with methamphetamine use.

3

(N.T. 14). BRIGHT asked to conduct other field sobriety tests. DEFENDANT demurred and "implied that he had a medical condition with his feet that would impair—impede his ability to conduct the tests." (N.T. 14-15).

BRIGHT again asked DEFENDANT if he had used methamphetamine. DEFENDANT told BRIGHT he had "used it earlier in the day. He did one bump of meth around 10p.m." (N.T. 15). PAPARELLA observed DEFENDANT's mannerisms to be nervous, repetitive and paranoid. (N.T. 33). PAPARELLA heard DEFENDANT admit to using methamphetamine. (N.T. 33).

BRIGHT asked DEFENDANT several times if he drove the black Chevy S-10 pickup truck. DEFENDANT told BRIGHT that he was driving just prior to calling the Pennsylvania State Police to report being followed. BRIGHT indicated that paranoia and hallucinations are consistent indicators of methamphetamine use. BRIGHT asked many times to verify that DEFENDANT "was actually in control of that vehicle within a reasonable close amount of time since I [BRIGHT] did not actually observe him driving the vehicle at any point." (N.T. 16-17).

BRIGHT and PAPARELLA had driven through the area where the vehicle was 5 to 10 minutes prior to receiving the dispatch call involving DEFENDANT. BRIGHT and PAPARELLA did not see the pickup at that time. (N.T. 17, 22, 32). At the time of dispatch, no companions were with DEFENDANT. (N.T. 22, 33) DEFENDANT's keys and wallet were removed

4

from DEFENDANT. BRIGHT did not confirm that there was a vehicle key in the set of keys. (N.T. 23) BRIGHT did not observe drug paraphernalia in plain view of the vehicle. There was no indication that drugs were used recently inside the vehicle. (N.T. 22-23).

DEFENDANT consented to a legal blood draw, which was conducted at 12:34a.m. on September 3, 2016 at the Good Samaritan Hospital, Lebanon, Pennsylvania. (N.T. 36). DEFENDANT's whole-blood sample analysis revealed the presence of methamphetamine and amphetamine. (N.T. 36-37).

## II.  PROCEDURAL HISTORY

On April 18, 2018, the DEFENDANT was tried and found guilty by a Lebanon County jury on charges of Driving Under the Influence of a Controlled Substance. He was found guilty by this Court of Driving While Operating Privileges Were Suspended or Revoked. On June 6, 2018, the DEFENDANT was sentenced to serve two (2) to five (5) years in a State Correctional facility. Shortly thereafter, the DEFENDANT filed Post-Sentence Motions. This Court denied those Post-Sentence Motions via an Opinion dated October 10, 2018.

On April 22, 2019, the DEFENDANT filed a *pro se* PCRA Petition. We appointed Attorney Melissa Montgomery to represent the DEFENDANT regarding his PCRA. An initial hearing was conducted on July 8, 2019. As is the custom of this Court, and before any testimony was presented, we

solicited a statement from the DEFENDANT's attorney about the issues that were being pursued. The following issues were identified:

(1) That trial counsel was ineffective for failing to present evidence that would have proven that the DEFENDANT was not driving;

(2) That defense counsel was ineffective for failing to call Melissa Simcott as a witness. According to the DEFENDANT, Ms. Simcott would have acknowledged that she was driving the vehicle.

(3) That defense counsel failed to object to the Court's instruction that omitted control of the movement of a vehicle as an element of the DUI offense.

(4) That trial counsel prevented the DEFENDANT from testifying. And

(5) That trial counsel failed to object when the prosecutor argued during summation that the DEFENDANT should be convicted because he chose not to testify.

After we began to hear testimony, it became quickly apparent that both sides should have subpoenaed witnesses who had material information regarding the issues outlined above. To enable the parties to subpoena the needed witnesses, we suspended testimony and re-scheduled the conclusion of the PCRA hearing for October 10, 2019.

On October 10, 2019, DEFENDANT's trial counsel, Elizabeth Judd, provided testimony. However, the DEFENDANT could not or would not present testimony from his proposed witness, Melissa Simcott.

6

At the conclusion of testimony, we issued a Court Order dated October 15, 2019 to deny the DEFENDANT's PCRA Petition. The DEFENDANT filed an Appeal. We solicited a Concise Statement of Errors from the DEFENDANT's counsel. One was provided on December 5, 2019. The DEFENDANT's Rule 1925 issues were similar, but not identical to the ones he raised prior to commencement of the PCRA proceeding. The issues the DEFENDANT identified in his PCRA Petition were as follows:

(1) That defense counsel was ineffective for failing to establish that the DEFENDANT was not operating a motor vehicle on October 6, 2016.

(2) That trial counsel was ineffective for failing to subpoena Melissa Simcott.

(3) That trial counsel was ineffective for not requesting a transcript of the jury instructions provided by the Court.

(4) That trial counsel was ineffective for "not allowing" the DEFENDANT to testify, and

(5) That trial counsel was ineffective for filing to object to the prosecutor's summation.

Although we are loathe to request our already over-burdened court reporters to prepare additional transcripts, we nevertheless solicited a transcript of the portion of the Prosecutor's summation and our jury instructions that addressed the elements of the DUI offense. That transcript

7

has been prepared and is now part of the record in this case. It clearly shows that this Court did tell the jury that control over the movement of a motor vehicle is an element to any DUI offense.

We will address all of the DEFENDANT's PCRA issues within the body of this Opinion.

## III. LEGAL PRINCIPLES GOVERNING PCRA PETITIONS

The PCRA provides for an action by which innocent persons convicted of crimes that they did not commit and persons serving illegal sentences can obtain relief. 42 Pa.C.S. § 9542. The PCRA is the exclusive method by which collateral relief may be obtained in Pennsylvania. *Commonwealth v. Chester*, 733 A.2d 1242, 1250 (Pa. 1999). To be eligible for relief under the PCRA, a defendant must prove the following elements by a preponderance of the evidence: (1) He must prove that he has been convicted of a crime under the laws of this Commonwealth and that he is serving a sentence of imprisonment, probation or parole for a crime; (2) he must prove that the conviction resulted from one of the enumerated errors listed in § 9543(a)(2); and (3) he must prove that the allegation of error has not been previously litigated or waived. Finally, he must prove that the failure to litigate the issue prior to or during trial could not have been the result of any rational, strategic or tactical decision by counsel. 42 Pa.C.S. § 9543(a).

8

Trial counsel will always be presumed effective, and the Defendant bears the burden of proving otherwise. *Commonwealth v. Lewis*, 708 A.2d 497, 500 (Pa.Super. 1988) (citing *Commonwealth v. Williams*, 570 A.2d 75, 81 (Pa. 1990)). In determining whether counsel rendered ineffective assistance, the court must first determine whether the issue underlying the claim of ineffectiveness is of arguable merit. *Commonwealth v. DiNicola*, 751 A.2d 197, 198 (Pa.Super. 2000) (citing *Commonwealth v. Johnson*, 588 A.2d 1303, 1305 (Pa. 1991)). If the claim is without arguable merit, the Court's inquiry ends, because counsel cannot be deemed ineffective for failing to pursue a meritless issue. *DiNicola*, 751 A.2d at 198.

If a defendant's underlying claim is of arguable merit, we must examine the action chosen by trial counsel in order to ascertain if that action was designed to effectuate the Defendant's interest. *Id.* The fact that trial counsel's strategy may not ultimately have led to an acquittal does not render the strategy legally deficient. *Commonwealth v. Spotz*, 896 A.2d 1191, 1235 (Pa. 2006). The Defendant must establish that but for counsel's deficient performance, the result of his trial would likely have been different. *DiNicola*, 751 A.2d at 198.

## IV. ANALYSIS

### A. Proof that the DEFENDANT was Driving

The DEFENDANT now claims that his trial counsel was ineffective for failing to question the investigating police officer about the location of the DEFENDANT's keys, the location where the DEFENDANT was standing and the fact that the officer failed to feel the hood of the DEFENDANT's vehicle in order to ascertain if it was warm. The purpose of such testimony was to ostensibly establish that the DEFENDANT had not operated the pick-up truck prior to arrival of police.

A review of the trial transcript reveals that Attorney Judd did in fact question the investigating officers about the location of the DEFENDANT's keys and the fact that the officers did not observe the DEFENDANT driving the vehicle. Trial counsel did in fact argue to the jury that there was insufficient proof that the DEFENDANT had been operating a vehicle. More important, Attorney Judd provided credible testimony at the time of the PCRA Hearing that her client admitted to her that he had been driving the vehicle. While it is true that Attorney Judd did not solicit information about whether the police felt the hood of the pick-up truck, given the totality of all of the rest of the information presented, and given that Attorney Judd would have had no way of knowing whether the police did in fact detect warmth from the hood of the DEFENDANT's vehicle, we cannot and will not equate Attorney Judd's failure to ask that one question with ineffectiveness.

10

In point of fact, there was overwhelming evidence that DEFENDANT operated the pick-up truck. State Police testified that on multiple occasions and in multiple ways, the DEFENDANT himself admitted that he had been operating the vehicle. In fact, he made a bizarre claim that he had been involved in a lengthy chase that began in Hazelton and ended in Jonestown where police encountered him and his vehicle.

Looking at the totality of the record before us, we cannot and will not declare Attorney Judd to be ineffective for failing to rebut what was likely unassailable – that the DEFENDANT had operated the pick-up truck prior to his encounter with police.

### B. Testimony of Melissa Simcott

The DEFENDANT claims that trial counsel should have subpoenaed Melissa Simcott. He claims that Ms. Simcott would acknowledge that she was driving the vehicle and he was not. In July at the time of the first PCRA Hearing, we advised the DEFENDANT that he would have to procure Ms. Simcott's testimony in support of his bald allegations. We afforded the DEFENDANT with three (3) months to do so. Even in that time period, the DEFENDANT was unable or unwilling to procure testimony from Melissa Simcott to corroborate his self-serving claim that she was driving the pick-up truck.

It is common for convicted defendants to file PRA claims based upon the premise that their lawyer should have but did not subpoena testimony

11

from witnesses. The legal principles governing such situations are very well established. A defense attorney's failure to call certain witnesses does not constitute *per se* ineffectiveness. *Commonwealth v. Washington*, 592 Pa. 698, 927 A.2d 586, 599 (2007). In establishing whether defense counsel was ineffective for failing to call witnesses, a defendant must demonstrate that 1) the witnesses existed and were available; 2) counsel was aware of the existence of the witnesses, or should have known of their existence and availability; 3) the proposed witnesses were ready, willing and, able to testify on behalf of the defendant; and 4) the absence of the proposed testimony prejudiced him. *Commonwealth v. Hall*, 549 Pa. 269, 290-92, 701 A.2d 190, 201 (Pa.1997).

In this case, the record is devoid of any evidence – other than the incredible and self-serving claims of the DEFENDANT himself – that Melissa Simcott was driving the pick-up truck on October 16, 2016. Melissa Simcott was not located in the vicinity of the pick-up truck when police arrived. The DEFENDANT did not tell police that the vehicle had been operated by Melissa Simcott. The DEFENDANT never told his own lawyer that Melissa Simcott was the driver. Despite being given three (3) months to procure Ms. Simcott's purportedly exculpatory testimony, the DEFENDANT was either unwilling or unable to procure testimony or evidence that she was in fact the driver of the pick-up truck. Under such

12

circumstances, the DEFENDANT's claim that trial counsel was ineffective for failing to subpoena Melissa Simcott must fail.

## C. Transcript of Jury Instructions

Nowhere is the DEFENDANT's desperation better exemplified than it is with respect to his argument about the Court's jury instructions. Without anything other than his own misguided hopes, the DEFENDANT argues that this Court failed to instruct the jury that physical control of the movement of a motor vehicle was an element of the DUI offense. Neither the prosecutor nor the DEFENDANT's attorney recalled the type of glaring omission that the DEFENDANT described. In addition, this jurist has conducted hundreds of DUI trials during his twenty (20) years on the bench. Never have we failed to instruct a jury about the "physical control of the movement of a vehicle" element.

This Court is very reluctant to overburden Lebanon County's already overworked court reporters by requiring them to prepare a transcript simply because a defendant makes a claim that we know is not accurate. Nevertheless, so that this does not devolve into a battle of memories, we did procure a transcript of the portion of our jury instruction that addressed the elements of DUI. That transcript is now part of the record. It clearly reveals that this Court properly instructed the jury that physical control of the movement of a motor vehicle is an element of the DUI offense.

Accordingly, the DEFENDANT's PCRA claim regarding the jury instruction of this Court must be denied.

### D. Testimony of the DEFENDANT

The DEFENDANT claims that his lawyer prevented him from testifying. Presumably, the DEFENDANT wanted to tell the jury that he was not the driver of the pick-up on October 16, 2016. We reject the DEFENDANT's argument for multiple reasons.

Trial counsel Elizabeth Judd presented credible testimony that she and the DEFENDANT discussed the question of whether or not to testify. Attorney Judd stated that the DEFENDANT made the decision not to testify and that she never coerced him into making this decision. We find Attorney Judd's testimony to be credible. We conclude as a finding of fact that the DEFENDANT himself chose not to testify and that choice was not forced upon him by Attorney Judd.

Although the above finding disposes of the DEFENDANT's argument, we also need to point out that throughout the proceedings, the DEFENDANT *admitted* to Attorney Judd that he drove the pick-up truck. As a lawyer, Attorney Judd has a duty not to suborn perjury or present testimony she knows to be false. To the extent that the DEFENDANT now believes he should have been called as a witness to deny driving, such testimony would have been inconsistent with information the DEFENDANT provided privately to Attorney Judd. This inconsistency would have

14

created a dilemma in open Court for Attorney Judd as soon as she realized the DEFENDANT was lying to the jury. This is a secondary reason why Attorney Judd cannot be deemed ineffective for failing to call the DEFENDANT as a witness.

### E. Prosecution's Closing Arguments

The DEFENDANT's last issue is again dependent upon his faulty and self-serving memory of what occurred at trial. DEFENDANT argues that the prosecutor improperly commented upon his failure to take the witness stand. The Court does not remember such an argument. Neither did the DEFENDANT's trial counsel. Once again, we have asked one of our overburdened court reporters to take the time to unnecessarily transcribe the prosecutor's closing argument. That transcription is part of the record. As with the closing instruction, the transcript establishes beyond any doubt that the prosecutor never mentioned or sought to take advantage of the DEFENDANT's failure to testify at trial. Once again, this argument by the DEFENDANT is nothing more than a red herring. It provides no ground for relief under the PCRA.

## V.  CONCLUSION

There is absolutely not validity to any of the DEFENDANT's PCRA arguments. It is indeed unfortunate that the DEFENDANT's bogus arguments forced the taxpayers of this community to pay for a lawyer to

15

represent the DEFENDANT, a prosecutor to investigate and rebut the DEFENDANT's arguments and court reporters who were forced to unnecessarily prepare transcriptions to prove what everyone involved in this case already knew — that this DEFENDANT is so desperate that he will stop at nothing, including fabrication of claims, to avoid responsibility for his own conduct.

We will now give this case to the Pennsylvania Superior Court with our recommendation that the DEFENDANT's arguments be rejected completely.