J-S01035-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DERRICK RAHEEM HARRISON | : | |
| | : | |
| Appellant | : | No. 736 MDA 2023 |

Appeal from the Judgment of Sentence Entered February 2, 2023
In the Court of Common Pleas of Huntingdon County Criminal Division at
No(s): CP-31-CR-0000030-2022

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED JULY 23, 2024**

Appellant, Derrick Raheem Harrison, appeals from the aggregate judgment of sentence of 40 to 80 years' incarceration imposed after his conviction by a jury of attempted murder with serious bodily injury, burglary of a building adapted for overnight accommodations – person present and bodily injury crime, burglary of a building adapted for overnight accommodations – person present, robbery, aggravated assault, strangulation, reckless endangerment, simple assault, criminal trespass, and three counts of theft.[1] For the reasons set forth below, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 901(a) and 2502, 3502(a)(i) and (ii), 3701(a)(1)(i), 2702(a)(1), 2718(a)(1), 2705, 2701(a)(1), 3503(a)(1)(ii), and 3921(a), respectively.

Appellant was charged with the above offenses and the summary offense of harassment for breaking into a home in rural Huntingdon County near the Pennsylvania Turnpike on June 20, 2021, strangling the homeowner, an 86-year-old woman (Victim), to the point that she lost consciousness and control of her bodily functions, and stealing Victim's cell phone, $40 in cash, car keys, and car. Criminal Information; Trial Court Opinion, 6/5/23, at 1-2. Appellant was tried on these charges November 22 and 23, 2022, with all charges other than harassment tried to a jury and the harassment charge tried to the court. On November 23, 2022, the jury found Appellant guilty of attempted murder, the two burglary charges, robbery, aggravated assault, strangulation, reckless endangerment, simple assault, criminal trespass, and three counts of theft and the trial court found him guilty of the summary harassment charge. N.T. Trial at 252-53.

The trial court sentenced Appellant to an aggregate 40 to 80 years' incarceration on February 2, 2023, consisting of consecutive sentences of 20 to 40 years for attempted murder with serious bodily injury, 10 to 20 years for burglary of a building adapted for overnight accommodations – person present, and 10 to 20 years for robbery, and no further sentence on the other convictions. Sentencing Order; Trial Court Opinion, 6/5/23, at 7-8. Appellant filed a timely post-sentence motion that raised, *inter alia*, a claim that the verdict was against the weight of the evidence. On May 9, 2023, the trial

court denied Appellant's post-sentence motion in its entirety. Trial Court Order, 5/9/23. This timely appeal followed.

Appellant raises the following three issues in this appeal: (1) whether the evidence was insufficient to prove that he committed the crimes, (2) whether the verdict was against the weight of the evidence, and (3) whether he is entitled to a new trial on the ground that the prosecutor made improper comments in his closing argument. Appellant's Brief at 5.[2] None of these issues has merit.

Our standard of review in a challenge to the sufficiency of the evidence is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the

---

[2] Appellant lists these as two issues, combining the issues of sufficiency of the evidence and weight of the evidence in a single issue. As discussed below, weight and sufficiency of the evidence are distinct issues, and we therefore discuss them as separate issues.

credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Tucker*, 143 A.3d 955, 964 (Pa. Super. 2016) (quoting *Commonwealth v. Hansley*, 24 A.3d 410 (Pa. Super. 2011)) (brackets omitted).

The Commonwealth is required to introduce sufficient evidence to prove beyond a reasonable doubt both the statutory elements of the crimes and that the defendant was the perpetrator of the crimes. *Commonwealth v. Smyser*, 195 A.3d 912, 915 (Pa. Super. 2018); *Commonwealth v. Brooks*, 7 A.3d 852, 857 (Pa. Super. 2010). Appellant does not dispute that the evidence was sufficient to prove the elements of the offenses of which he was convicted. Rather, he argues only that the evidence was insufficient to prove that he was the person who committed those acts. Appellant's Brief at 8-13.

Contrary to Appellant's contentions, the evidence introduced at trial was amply sufficient to prove that Appellant was the person who committed the crimes of which he was convicted. That evidence included Appellant's admissions to state troopers, after being given *Miranda*[3] warnings, that he entered Victim's house, strangled her until she went limp, stole Victim's cell phone, $40 in cash, and her car keys and car, and drove Victim's car to Philadelphia. N.T. Trial at 150-58. In addition, the Commonwealth introduced

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

evidence that Appellant made calls from Victim's cell phone shortly after the burglary and attack on Victim, evidence that credit cards bearing Appellant's name were found on an embankment of the Pennsylvania Turnpike near Victim's residence where Appellant said that he had been in his statements to the state troopers, and evidence of Victim's cell phone and car traveling on the Pennsylvania Turnpike toward Philadelphia, which further confirmed Appellant's statements to the state troopers. *Id.* at 119-29, 135-39, 141-44, 178-97.

Appellant argues that the evidence was insufficient to prove that he committed the crimes because there was no DNA or fingerprint evidence, that Victim could not identify her attacker, that Victim told the emergency medical responder "they tried to kill me," and that the driver of Victim's car on the Pennsylvania Turnpike could not be seen well enough to identify him in the photographic evidence of the car on the Turnpike. Appellant's Brief at 8-9, 12-13. Those facts do not make the Commonwealth's evidence insufficient. The absence of identification testimony and DNA and fingerprint evidence does not make the evidence insufficient to prove that the defendant committed the crimes where, as here, other evidence is introduced that is sufficient to show that the defendant was the perpetrator. *Commonwealth v. Hobel*, 275 A.3d 1049, 1069-71 (Pa. Super. 2022). Moreover, Victim testified at trial that one man strangled her, and her description of the attacker was consistent with Appellant's appearance. N.T. Trial at 11-13, 19-22. The fact that she used

- 5 -

the word "they" to describe her attacker when she was semiconscious after waking up following the attack, *id.* at 78, 83, was not inconsistent with her trial testimony, as "they" may be used to refer both to multiple people and to a single unidentified person. *Id.* at 84; *see Merriam-Webster's Collegiate Dictionary* at 1298 (11th Ed. 2003).

Appellant contends in his second issue that the verdict was against the weight of the evidence based on the same alleged deficiencies as in his sufficiency of the evidence argument and on the grounds that there were other possible suspects that the state police investigated. Appellant's Brief at 8-9, 11-12. This claim likewise merits no relief.

A new trial may be granted on the ground that the verdict is against the weight of the evidence only where the verdict is so contrary to the evidence that it shocks the trial court's sense of justice. *Commonwealth v. Clemons*, 200 A.3d 441, 463 (Pa. 2019); *Commonwealth v. James*, 268 A.3d 461, 468 (Pa. Super. 2021); *Commonwealth v. Antidormi*, 84 A.3d 736, 758 (Pa. Super. 2014). Our review of the denial of a motion for a new trial based on weight of the evidence is limited. We review whether the trial court abused its discretion in concluding that the verdict was not against the weight of the evidence, not whether the verdict, in this Court's opinion, was against the weight of the evidence. *Clemons*, 200 A.3d at 463-64; *Hobel*, 275 A.3d at 1071 n.9; *Commonwealth v. Delmonico*, 251 A.3d 829, 837 (Pa. Super. 2021).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge …. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence ….

*Hobel*, 275 A.3d at 1071 n.9 (quoting *Delmonico*).

The trial court found that the jury's verdict was not against the weight of the evidence because the evidence of Appellant's guilt in this case was credible and, indeed, overwhelming. Trial Court Order, 5/9/23 at 1-2; Trial Court Opinion, 6/5/23, at 12. That conclusion was not an abuse of discretion. As noted above, there was no inconsistency between Victim's testimony and her statement on the day of the attack or between her description of the attacker and the jury's finding that Appellant was the attacker. The fact that there was no identification testimony or DNA or fingerprint evidence does not make a guilty verdict against the weight of the evidence where, as here, other evidence is introduced that is sufficient to show that the defendant was the perpetrator. *Hobel*, 275 A.3d at 1071-72. The fact that there were two other possible suspects does not make the verdict against the weight of the evidence, as the record shows that the state police concluded based on their investigation that neither of those other persons could have been where Victim was attacked or where her cell phone and car traveled at the time of those events. N.T. Trial at 159-65.

In his final issue, Appellant argues that a new trial is required because the prosecutor allegedly commented in his closing argument on Appellant's

failure to testify. Appellant's Brief at 9, 14-15. The law is clear that a prosecutor may not argue that the defendant's failure to testify is evidence of his guilt or that the jury can draw an adverse inference from his failure to testify. **Commonwealth v. Wright**, 961 A.2d 119, 141-42 (Pa. 2008); **Commonwealth v. Trivigno**, 750 A.2d 243, 248-49 (Pa. 2000).

The prosecutor, however, made no such argument. The only statement that Appellant contends was improper was the statement "There's no testimony about that" in the following argument concerning Appellant's statements to the state police that he entered Victim's house to steal a car to escape from people who he thought were going to harm him and that he panicked when he saw Victim:

> [A]t the time that he was strangling her did he have a specific intent to kill her? Whatever reason can we suggest to you or can you think about that would not indicate that was his specific intent? He choked her to the point of unconsciousness. There was no reason for her - for him to do that unless he's being caught and he's trying to cover up his crime. If he truly was in danger, if he truly believed that there was people were [*sic*] after me. You got to help me. Don't you think the first words he would have said to her in the kitchen was hey, I know you don't know me but people are after me. Can I use the phone? **There's no testimony about that.** Or do you think the first call would have been calls to 911 or to the police or do you think the testimony would have been that when he's calling people he's saying to Rachel, my God, you got to meet me. You've got to help me. People are after me. None of that ever happened. He was in there. He got caught and his attempt was to kill her. And he took a substantial step to doing that.

N.T. Trial at 223-24 (emphasis added).

- 8 -

Contrary to Appellant's assertions, it is clear from the context and trial record that the words "There's no testimony about that" referred to the fact that Victim testified that her attacker said nothing when he saw her and strangled her, not to Appellant's failure to testify. *Id.* at 20, 228. A comment that there is no evidence of something can be a comment on what the evidence at trial showed, rather than a comment on the defendant's failure to testify or produce evidence. *Commonwealth v. Rolan*, 549 A.2d 553, 556 (Pa. 1988) (prosecutor's statement in closing argument that "[y]ou have heard absolutely no evidence" that someone other than defendant shot victim was a permissible comment on the evidence that defendant shot victim, not a comment on defendant's silence). Indeed, the prosecutor's comment here did not refer to Appellant at all. Because it was a comment only on the inferences that could be drawn from Victim's testimony, not from Appellant's failure to testify, the prosecutor's statement was not improper.

Moreover, even if there were a possibility that the comment could be misunderstood to refer to Appellant's failure to testify, it would not be grounds for a new trial. Where the comment does not clearly refer to the defendant's failure to testify, any prejudice may be cured by instruction from the trial court that the defendant has an absolute constitutional right not to testify and that no adverse inference could be drawn from the fact that he did not testify. *Commonwealth v. Hall*, 701 A.2d 190, 199 (Pa. 1997). Here, the trial court properly instructed the jury that Appellant "has an absolute right founded on

the Constitution to remain silent," that "[y]ou may not draw any inference of guilt or any other reference adverse to the Defendant from the fact that he did not testify," and that Appellant had no burden to present any evidence or to prove anything. *Id.* at 233, 246.

For the foregoing reasons, none of Appellant's issues merits relief. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/23/2024